# Garden City Shopping Center, Inc.
## v. Super General Stores

*Saul Davis,* for plaintiff.
*Herbert G. Sheinberg,* for defendants.
*James P. Ross,* for garnishee.

SILVESTRI, *J.,* May 17, 1982—On June 6, 1978, plaintiff Garden City Shopping Center, Inc., as the lessor, and defendants Super General Stores, Inc. and Stanford H. Slutsky, as the lessees, executed a

written lease for a storeroom area located at Garden City Shopping Center, Monroeville, Pa. The term of the lease was for a two-year period commencing on July 1, 1978 and ending on June 30, 1980, and provided for a monthly rental payment of $1,875. On April 1, 1979, the monthly payment was not made to plaintiff and defendants had abandoned and vacated the storeroom area. On April 18, 1979, plaintiff obtained a judgment by confession on the lease against both of defendants in the amount of $28,125.[1]

On December 14, 1979, a praecipe for a writ of execution to satisfy the judgment against defendants was filed by plaintiff against the property of the defendants only. A sheriff's sale of the personal property of defendants was scheduled for January 17, 1980. On January 14, 1980, a property claim was filed by Slutsky Grocery Company.[2]

A praecipe for the reissuance of the writ of execution was subsequently filed on February 7, 1980 by plaintiff; on the same date, the writ of execution to satisfy the judgment against defendants was reissued, directing the sheriff of Allegheny County, "(1) . . . to levy upon the property of the defendant(s) and to sell . . . their . . . interest(s) therein; (2) . . . to attach the property of the defendant(s) not levied upon in the possession of Equibank Bank, N.A., as garnishee and to notify the garnishee that (a) an attachment had been issued; (b) the garnishee is enjoined from paying any debt to or for the account of the defendant and from delivering any

---

1. The confession of judgment proceedings are docketed at GD 79-10008.

2. No further proceedings on the property claim were held and at the time of the trial, plaintiff indicated that efforts to dismiss or to otherwise determine the property claim had been abandoned.

property of the defendant or otherwise disposing thereof." The reissued writ set forth the amount due as $22,125 plus interest from April 18, 1979.

The reissued writ and the interrogatories directed to the garnishee, which were endorsed with a notice to plead, were served upon Equibank on February 8, 1980.

The interrogatories[3] to the garnishee which are relevant to the proceeding herein involved are the second, third, seventh and eighth interrogatories as follows:

"SECOND. At the time you were served or at any subsequent time, was there in your possession, custody or control or in the joint possession, custody, control of yourself and one or more other persons any property of any nature owned solely or in part by the defendant, including checking accounts in the names of Stanford Slutsky and Kathy or Kathleen Slutsky, his wife?

"THIRD. At the time you were served or at any subsequent time did you hold legal title to any property of any nature owned solely or in part by the defendant or in which defendant held or claimed any interest, including checking accounts in the names of Stanford Slutsky and Kathy or Kathleen Slutsky, his wife?

"SEVENTH. At the time you were served or at any subsequent time, did the defendant, Stanford H. Slusky, have any type of savings account, checking account or other deposit of funds with you, whether in his own name or jointly with others? If so, state fully the type, kind, date of creation of

---

3. The original and supplemental interrogatories to the garnishee and the answers thereto were received into evidence at the hearing on this matter and made part of the record.

same, and amount of same at the time of service and at the time of your filing these Answers to Interrogatories?

"EIGHTH. If your answer to any of the first six Interrogatories is in the affirmative, state the type of property and the amount or value of same in detail, and provide any and all other particulars of the transactions as may be relevant to this attachment."

In its reply, filed on February 21, 1980, and endorsed with a notice to plead, Equibank answered each of the above interrogatories by reference to its new matter. Equibank stated in its new matter that the

"[r]ecords of the garnishee indicate the existence of two checking accounts in the joint names of Sanford H. and Kathleen B. Slutsky. Husband and Wife. Upon information and belief, Equibank avers that the above referenced two joint checking accounts are held by Sanford H. and Kathleen B. Slutsky as husband and wife, and therefore as tenants by the entireties and are therefore not attachable under the Writ herein involved against Super General Store, Inc., a corporation and Stanford H. Slutsky."

Plaintiffs reply to the garnishee's new matter filed on February 26, 1980, admitted the existence of the two checking accounts in the joint names of Stanford H. and Kathleen B. Slutsky, but denied the remaining averments stating that the averments were conclusions of law to which it need not respond.

Plaintiff also filed a notice that supplemental interrogatories to the garnishee were mailed to Equibank on February 25, 1980. Equibank's reply to the supplemental interrogatories was filed on March 6, 1980 and incorporates the form of the two

interrogatories as well as its answers thereto.[4] The supplemental interrogatories requested the garnishee to "[s]et forth the precise amount on deposit in each of the two checking accounts referred to in the new matter portion of your reply to interrogatories," (1) as of the date of service of the original interrogatories, February 8, 1980 and (2) as of the date of the affidavit to the garnishee's reply to the original interrogatories, February 21, 1980. Equibank endorsed its answer with a notice to plead and answered each of the supplemental interrogatories by reference to its new matter, which set forth the identical averments stated in its new matter filed in response to the plaintiff's original interrogatories.

A second set of supplemental interrogatories was sent to Equibank by plaintiff to which Equibank filed its reply on April 1, 1982. There is no indication of the date upon which Equibank was served the second set of supplemental interrogatories. There is nothing in the record which would indicate that in filing the first and second sets of supplemental interrogatories, the plaintiff had sought leave of court to file the same.

The second set of supplemental interrogatories requested the following information:

"1. State the name, office address and present job title of the officer or other employee of the garnishee bank having custody of the records pertaining to the two checking accounts in the names of the defendant, Stanford H. Slutsky, and his wife, referred to in the Garnishee's Answer to

4. Neither the docket entries nor the file papers reveal that the supplemental interrogatories were filed with the court; however, as Equibank did answer such interrogatories, we treat the supplemental interrogatories as part of the record.

Interrogatories and Supplemental Interrogatories as of and subsequent to February 8, 1980.

"2. State whether the Garnishee bank has in its possession or subject to its control photocopies or other evidence of the checks drawn on the two checking accounts referred to in the preceding Interrogatory as of and subsequent to February 8, 1980.

"3. If your Answer to the preceding Interrogatory is in the affirmative, state the name and address of the establishment at which such evidence is located and the name and title of the person at that establishment who has possession or control of such evidence."

Equibank objected to the interrogatories as having not been filed in a timely manner, but in response to the first and third interrogatories, named Virginia A. Blake as its employee having custody and control of the pertinent records. Equibank answered the second interrogatory in the affirmative.[5]

On April 5, 1982, the parties proceeded to trial without a jury before this court. From the testimony adduced and the evidence presented, we find the facts to be as follows. By deed dated September 26, 1977,[6] Stanford Slutsky acquired property located at 1906 Penn Avenue, Pittsburgh, Pennsylvania from Penn Central Park, Inc. Between the date of the execution of the written lease on June 6, 1978 and the effective date of the lease on July 1, 1978,

5. Equibank merely stated its objection to the timeliness of the filing of the interrogatories. Equibank did not seek a determination by the court on the merits of its objection. By failing to request the court to address its objection and by answering the interrogatories to which the objection was made, Equibank has waived its objection.

6. The deed is recorded in the Recorder of Deeds Office, Allegheny County, Pa., at Deed Book Volume 5852, page 929.

Stanford Slutsky excuted a deed, dated June 26, 1978, conveying the Penn Avenue property to himself and his wife, Kathleen B. Slutsky as tenants by the entireties. The deed, reciting a consideration therefor of natural love and affection, was recorded on March 27, 1979[7] — approximately nine months after its execution. Stanford and Kathleen Slutsky sold the Penn Avenue property to Ross Aiello and Louis Childs, the grantees, closing the sale on December 21, 1979. The consideration paid for the sale of the property was $85,000. After payment of an existing mortgage of $15,000 and deductions for closing costs, the net sale proceeds which the Slutskys received amounted to $46,776.04. The net proceeds were deposited into the Slutsky's joint checking account held at Equibank numbered 246 525 915.[8] As of February 8, 1980, the date of the service of the reissued writ and original interrogatories on Equibank, the balance in the joint checking account was $36,887.13. This sum represented the remainder of the proceeds from the sale of the Penn Avenue property. The funds held in the joint checking account in the names of Stanford H. and Kathleen B. Slutsky were not frozen by Equibank upon the service of the writ of execution and the interrogatories and the funds were withdrawn and, as of the date of the hearing before this court, the account was closed.

There is nothing in the reissued writ of execution or in the original interrogatories, filed concurrently

7. The deed is recorded in the Recorder of Deeds Office, Allegheny County, Pa., at Deed Book Volume 6082, page 919.

8. The record indicates that Stanford and Kathleen Slutsky maintained two joint checking accounts at Equibank. The other joint account had a balance of $1,075.99 as of February 8, 1980. It is not contended nor is there any evidence which would indicate that any of the funds of this joint account were derived from the sale of the Penn Avenue property.

therewith on February 8, 1980, which would have or reasonably should have given Equibank notice, at that point in time, that the funds on deposit in the account held in the names of Stanford and Kathleen Slutsky were the funds of Stanford solely and that the funds had been deposited into the joint account in fraud of the creditors of the husband. Nor did the testimony adduced or the evidence presented at the hearing on this matter establish that Equibank knew or should have known as of February 8, 1980 that the funds of the joint account were solely the funds of Stanford and that the funds had been deposited into the account in fraud of the creditors of Stanford.

It is clear that in Pennsylvania a joint bank account held in the names of a husband and a wife is not ordinarily subject to attachment by the creditors of one of the spouses.[9] Where a bank account is held in the names of a husband and a wife, the presumption is that the account is held as tenants by the entireties and not as joint tenants. Re Holmes Estate, 414 Pa. 403, 200 A.2d 745 (1964). The bank account represents a unity of interest, a unity of estate and a unity of possession. The title to the account is not vested in either of the spouses exclusively; rather, it is vested in the unity of the husband and wife. The unity of the husband and wife is a separate legal entity which is not affected by the authority of either spouse to withdraw the funds of the bank account. "The fact that either husband or wife may withdraw the account on their individual check does not destroy the unity of interest, nor does it affect the estate by the entireties. It must be

9. For a discussion of a joint bank account as a subject of attachment, garnishment or execution by a creditor of one of the joint depositors, see 11 ALR3d 1465.

presumed that the husband or wife in withdrawing all or part of the account acts as the agent for both . . ." Goretzka v. Whissen, 87 P.L.J. 57, 58, citing Bearhalter v. Bearhalter, 315 Pa. 225, 173 A.2d 172 (1934) Bostrom v. National Bank at McKeesport, 330 Pa. 65, 198 A.2d 644.

Plaintiff now seeks to recover from Equibank the sum of $22,125, with interest thereon from April 18, 1979, which represents the amount of the judgment against Super General Stores, Inc. and Stanford Slutsky as set forth in the reissued writ of execution. Plaintiff proceeds on the theory that Equibank failed to freeze the entireties account upon being served with the reissued writ of execution and original interrogatories and that it allowed the withdrawal of the funds from said account leaving no funds available for the satisfaction of plaintiff's judgment, claiming that the entireties fund was the sole property of Stanford and was transferred to the entireties account in fraud of creditors.[10] To support its claim to the funds which were held in the joint bank account, plaintiff argues an execution may proceed against bank accounts held by the entireties, provided it is established the entireties property was fraudulently conveyed from the judgment debtor, whether husband or wife, to the husband and wife. Plaintiff argues that the

---

10. Defendant Stanford Slutsky argues the issue of whether Equibank should have retained the funds of the joint bank account is not before this Court. We find, however, that the attachment execution proceeding is the sole proceeding to adjudicate the question of whether a garnishee breached its duty to an attaching creditor. There exists no contractual relationship between a creditor and a garnishee and no common law duty of a garnishee to freeze a judgment debtor's bank account upon which the plaintiff could have initiated an action in assumpsit.

funds held in the joint account at the time of the attachment execution on February 8, 1980 could be traced to a fraudulent conveyance of the Penn Avenue property from Stanford Slutsky to himself and his wife, Kathleen, and that it had the right to follow the proceeds from the sale of the property to the above-named third parties to the joint bank account.

If title and ownership of the Penn Avenue property had remained in the hands of Stanford and Kathleen Slutsky and plaintiff had established the conveyance to the tenancy by the entireties was in fraud of the husband's creditors, then plaintiff, as judgment creditor, could have executed against the property so transferred. Patterson v. Hopkins, 247 Pa. Super. 163, 371 A.2d 1378 (1977). Under the facts of the present case, however, the Penn Avenue property was subsequently conveyed and there is no evidence that it was not a fair consideration to bona fide purchasers preventing the plaintiff from executing against the same. The proceeds from the sale of the property, originally owned individually by Stanford Slutsky, were deposited into one of the joint bank accounts held by Stanford and Kathleen Slutsky and were directly traceable to that account as of the date of the service of the writ of execution and the interrogatories upon Equibank. If a judgment creditor could have executed upon the Penn Avenue property upon a showing the conveyance of the same to the tenancy by the entireties was in fraud of creditors, the intervening event of a sale to a third party should not prevent a judgment creditor from attaching the proceeds of that sale which are directly traceable to a bank account. The debtor may not layer immunity from execution by a fraudulent conveyance to a spouse and himself, sale of the property to a third party, and deposit of the pro-

ceeds into a bank account held jointly with the spouse. Consequently, we find that if the evidence establishes a fraudulent conveyance of property by a husband or wife of his or her individually owned property to a tenancy by the entireties and the proceeds of a subsequent sale of the same property to bona fide purchasers may be traced to a joint bank account of the husband and wife, then the joint bank account is not immune to attachment by the defrauded creditor. "[T]he law does not sanction and will not permit the use of a joint account creating a tenancy by entireties to be used for the purpose of defrauding creditors [of the individual spouse.]" Watters v. DeMilio, 16 D. & C. 2d 747, 751 (1957).

The issue presented under the facts of this case is whether an attachment execution proceeding initiated by a writ of execution and interrogatories pursuant to Pa.R.C.P. 3140 et seq., may be employed to raise and adjudicate a question of title to property and particularly a question of whether a conveyance of real property was fraudulent and whether the proceeds of a sale of the real property may be attached when traced to an entireties account.

Stanford Slutsky argues that the appropriate procedure is one pursuant to Pa.R.C.P. 3118, which provides for supplementary relief in aid of execution, and that Rule 3118 provides the procedure which the plaintiff should have utilized if it desired to attempt to attach the assets of the entireties account. This contention was addressed by the Pennsylvania Supreme Court in Greater Valley Terminal Corporation v. Goodman, 415 Pa. 1, 202 A.2d 89 (1964).

In Greater Valley Terminal, supra, the Supreme Court was faced with the question of whether alleged fraudulent transfers can be set aside in sup-

plementary procedures in aid of execution under Pa.R.C.P. 3118. Appellee Greater Valley Terminal, the judgment creditor of appellant Goodman, served a writ of execution upon Goodman's property in his possession and in the possession of the appellants-garnishees which was returned unsatisfied. Appellee then filed a petition under Pa. R.C.P. 3118 for supplementary relief in aid of execution alleging Goodman had fraudulently conveyed stock certificates and assets of his single proprietorship to the garnishees. After appellee filed an amended petition for supplementary relief and a rule to show cause, a hearing was held and the lower court set aside as fraudulent the conveyances described above. The appeal to the Supreme Court followed.

The Supreme Court concluded that the voiding of fraudulent transfers is a type of relief which is inconsistent with the specific provisions of Pa.R.C.P. 3118 because only property the title to which is clearly in the judgment debtor is subject to the provisions of Rule 3118. The Supreme Court further concluded that title to property cannot be properly adjudicated under the procedures envisioned by Rule 3118.

As we stated previously, title to the joint bank account was in the hands of the separate legal entity of the husband and wife as tenants by the entireties. Therefore, title to the bank account was not clearly in the hands of the judgment debtor, Stanford Slutsky, and we must dismiss his contention that rule 3118 provided plaintiff with the vehicle for determining title to property not in the sole name of the judgment debtor and the attachment of the same.

In order to resolve the issue presented before this court, it is necessary to examine Pa.R.C.P. 3140 et

seq., the Uniform Fraudulent Conveyance Act,[11] and the case law which has developed relative thereto.

The Supreme Court in holding that Rule 3118 proceedings could not be employed to try title, went on to state, at 6,

"In this Commonwealth the issue of title to property in the hands of third persons sought to be executed against is properly adjudicated in the following proceedings: (1) An equity action under our Equity Rules brought by the judgment-creditor (or received in his behalf), involving a full hearing before a chancellor, the right to request a jury trial, and the right to file exceptions to the chancellors findings and to have them adjudicated by the court en banc; (2) Garnishee proceedings in accordance with Pa.R.C.P. 3140 et seq., under which there is the right to a jury trial*; (3) Proceedings under the Sheriff's Interpleader Act, in which there is the right to a jury trial; (4) An action of ejectment, after the property in the hands of a third party has been levied upon and sold at sheriff's sale as though it were the property of the judgment-debtor, in which a full hearing is required. The first two of the above remedies, under the circumstances of the instant case, might have been used by appellee to adjudicate title to the property, subject to the turnover order of the court below."

Plaintiff relies upon the Uniform Fraudulent Conveyance Act in its attempt to establish the deed from Stanford Slutsky to his wife and himself was fraudulent.[12] The Supreme Court noted in Greater Valley Terminal, supra, at 5, that:

---

11. Act of May 21, 1921, P.L. 1045, 39 P.S. §§351-363.

12. Under §357 of the Uniform Fraudulent Conveyance Act, "(e)very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in

"The Uniform Fraudulent Conveyance Act places no statutory limitations on the procedure to be used to enforce its provisions. Each state which has adopted the Act is free to devise its own enforcement procedures within constitutional limits. (Citations omitted). Thus, there can be no question of the power of the Court by procedural rule to devise new methods for enforcement under that Act."

Thus, a garnishee proceeding pursuant to Pa. R.C.P. 3140 et seq. is appropriate for a determination of whether the property in the hands of a garnishee is the property of the judgment debtor and was the subject or result of a fraudulent conveyance.

In the recent case of Corbett v. Hunter, 292 Pa. Super. 123, 436 A.2d 1036 (1981), an action in equity to trace and attach funds of a husband into an entireties account and real property had been initiated in the lower court. The Chancellor had held

---

law to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." Although the date of the conveyance of the Penn Avenue property to Slutsky and his wife as tenants by the entireties preceded the date of the commencement of the lease, the Uniform Fraudulent Conveyances Act may be applied if the conveyance was made with actual intent to defraud creditors. " '[A]s between husband and wife fraud is presumptively present when the conveyance is for a nominal consideration and is challenged by creditors', and this rule of law has been held to apply to conveyances covered by section [357]." Miami National Bank v. Willens, 410 Pa. 505, 190 A.2d 438 (1963) (Citations omitted). Such a conveyance is prima facie fraudulent; however, the presumption of fraud may be rebutted by clear and satisfactory evidence showing that the transaction was made in good faith. As previously noted, the deed from Stanford to Kathleen Slutsky and himself recited a nominal consideration of "natural love and affection" and is challenged by the plaintiff in the present action.

that the entireties fund was the property of the husband and had issued a decree directing that a writ of execution be issued against the entireties property and enjoining the husband and wife from conveying or otherwise disposing of the property and from encumbering the property.

In affirming the lower court, the Superior court stated, at 1038, citing Patterson v. Hopkins, 247 Pa. Super. 163, 371 A.2d 1378 (1977):

" 'With respect to execution sales, it is well settled that Pennsylvania subscribes to the majority view which regards entireties property as unavailable to creditors of one of the tenants.' [Citations omitted]. The Court in Patterson went on to note that the rule was not immutable, and that such execution was permissible when it was established that the husband or wife conveys his or her individual property to a tenancy by the entireties in a *fraud of creditors,* the defrauded creditors may in such circumstances execute on the property which has been transferred. The point is clear that a *fraudulent conveyance must initially be established prior to the right of execution being created as to such joint property.* If no fraudulent conveyance is proven, a creditor has no right to execute in any manner contrary to the general rule recognized in Patterson, and other cases cited therein." (Emphasis added).

The language of the Superior Court in Corbett, supra, initially appears to contradict the language of the Supreme Court in Greater Valley Terminal, supra. The Superior Court's opinion in Corbett, supra, clearly states that a fraudulent conveyance must initially be established prior to the right of execution being created. In Greater Valley Terminal, supra, the Supreme Court states that title may be determined in an execution proceeding pursuant to Pa.R.C.P. 3140 et seq. There is no reference in the

Corbett case, however, to the Supreme Court's decision in the Greater Valley Terminal case. We will not assume the opinions are incompatible.

Reading the Greater Valley Terminal and Corbett cases so as to achieve compatibility, the rule emerges that in order for the initial writ of execution and the initial interrogatories to freeze an entireties account for an ultimate determination of the title of the account, said writ and interrogatories must contain sufficient facts to notify the garnishee that the entireties property is the property of the individual judgment debtor-spouse and that it was transferred in fraud of creditors. This conclusion is inescapable by virtue of Pa.R.C.P. 3145(a), which provides that "[t]he procedure between the plaintiff and the garnishee shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in assumpsit."

As the Supreme Court stated in Hanchey v. Elliott Truck B. Co., Inc., 421 Pa. 131, 134, 218 A.2d 743 (1966), "The phrase 'as far as practicable' was included to emphasize the fact that proceedings to discover assets for purposes of collecting a judgment are basically different from the pleadings to commence an action. The execution rules did not, and could not, incorporate by reference the entire body of assumpsit rules." In determining whether the interrogatories filed by a plaintiff and the judgment debtor's answer thereto are to be treated as pleadings, which should be analyzed consistent with the procedural rules governing a complaint and an answer, or are to be treated as a discovery process, the court must consider whether or not the attachment execution proceeding will create factual and legal issues requiring resolution by a trial of the same. Where, as here, the judgment creditor seeks

to try title to property, the interrogatories and answer thereto function as a complaint and answer.

In this capacity as a complaint, the interrogatories must set forth factual assertions which present prima facie evidence that the entireties property which the judgment creditor seeks to attach for the debt of one of the spouses was fraudulently transferred or may be traced to a conveyance which was in fraud of creditors. Assertions by the judgment creditor in the interrogatories to the garnishee which initially establish that funds of an entireties account were deposited in fraud of creditors or may be traced to a fraudulent conveyance, without more, will not be sufficient to obtain the funds for the creditor; however, such factual assertions will be sufficient to attach the account until a court determination of the factual and legal issues raised thereby.

Inasmuch as the entireties account is generally regarded as the property of the separate legal entity of husband and wife and not a property of the husband or wife and as the object of the attachment execution proceedings is to freeze the account of the execution debtor, such information in the original interrogatories would serve to place the garnishee on notice that the funds of the entireties account are in fact solely those of the execution debtor. Unless the interrogatories contained such factual assertions, the garnishee would be subjected to liability for releasing the funds without the actual knowledge of the basis of the claim by the creditor against the funds. This would raise serious questions of due process.

Plaintiff seeks to recover the amount of its judgment which it sought to satisfy by attaching the joint bank account held in Equibank from Equibank for its failure to freeze the account. In or-

der to determine whether Equibank was under a duty to freeze the joint bank account, we must examine the writ and the interrogatories served upon Equibank. If the writ and the interrogatories initially established that the funds of the joint bank account were directly traceable to a fraudulent conveyance by the judgment debtor, then the service of the writ and interrogatories would have placed the garnishee on notice that the funds were the property of the defendant and would have invoked the mandates and injunctive orders of the writ.

In our examination of the interrogatories filed by the plaintiff, we are limited to a review of the interrogatories originally filed and served upon the garnishee. We may not consider the supplemental and additional supplemental interrogatories which were subsequently served upon Equibank. The Supreme Court in Hanchey, supra, noted that Rule 3145 contains no authorization for the filing of supplemental interrogatories and stated, at 134-5,

"What moves then remained open to the plaintiff if he was dissatisfied with the answer? (a) He could put the issue down for trial immediately or (b) he could move for judgment for any amount admitted to be due under Rule 3146(b) and proceed to trial for any remainder or (c) he could attack the form of the answer and seek additional information from the garnishee.

"Several procedural avenues are open for such an attack. Plaintiff could file a motion with the court to secure an order on the garnishee to file additional and more specific answer by analogy to Rule 4019(a)(1). He could file a motion with the court to file supplementary interrogatories under Rule 3144 or, as here, he could without a motion to the court, file discovery interrogatories to the garnishee as an opposite party, under Rule 4005, as part of 'discov-

ery in aid of execution' authorized by Rule 3117(a). That rule specifically authorizes 'written interrogatories' to a 'garnishee' to discover 'assets of the defendant.'

As plaintiff did not file a motion with this court to file supplemental interrogatories under Rule 3144, we must treat the supplemental and additional supplemental interrogatories as discovery interrogatories as part of discovery in aid of execution authorized by Rule 3117(a)).

The reissued writ of execution contained the injunction that "the garnishee is enjoined from paying any debt to or for the account of the defendant and from delivering *any property of the defendant* (Emphasis ours.) or otherwise disposing thereof." It is clear from the evidence that on February 8, 1980, there was facially no property of the defendant in the hands of Equibank. A close examination and the most liberal reading of the original interrogatories reveal no factual assertions that the funds of the entireties account as being the property of the individual judgment debtor-spouse and as having been the proceeds of a fraudulent conveyance.

As noted above, the first and second sets of supplemental interrogatories did not relate back to the original; however, even if the supplemental interrogatories had functioned as a complaint, examination thereof would again reveal nothing which would have put Equibank on notice that the funds were the proceeds of a fraudulent conveyance in that the funds were those of the individual judgment-debtor spouse. Accordingly, we will enter a verdict in favor of Equibank.