436 A.2d 1036

**Robert J. CORBETT,**

v.

**Frederick H. HUNTER and Anne H. Hunter, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued May 22, 1981.

Filed Nov. 6, 1981.

124

J. M. Maurizi, Pittsburgh, for appellants.

David C. Serene, Indiana, for appellee.

Before CERCONE, President Judge, and MONTGOMERY and VAN der VOORT, JJ.

MONTGOMERY, Judge:

The Defendant-Appellants file this appeal from a final order of the lower court which dismissed defense exceptions to a Decree Nisi, and granted equitable relief to the Plaintiff-Appellee. That relief ordered the Appellants to account for certain income received by the husband Appellant, including income which might be traced into the value of a residential property owned by Appellants in a tenancy by the entireties. Further, the order appealed from directed that a writ of execution be issued against that property and that Appellants not convey or otherwise dispose of the property or encumber it. On this appeal, the Appellants contend that the lower court erred in finding that deposits of the husband's income into a joint account shared with his wife, from 1966 to the present, constituted fraudulent con-

veyances within the meaning of the Uniform Fraudulent Conveyance Act.[1]

A review of the record reveals the following pertinent facts: In 1963, the Plaintiff-Appellee, Robert B. Corbett, loaned the sum of $25,000 to an entity known as the Hunter Corporation. He received a promissory note in return. At that time the Appellant, Frederick H. Hunter, was the Corporation's chief officer. On September 15, 1965, at the suggestion of Mr. Hunter, 1250 shares of the stock of the Corporation were conveyed to Corbett in exchange for the promissory note. On or about the same date, Mr. Hunter orally agreed to personally repurchase the shares, for $25,-000, and promised that the repurchase would be carried out within a few months thereafter. The promise was not fulfilled. On December 31, 1966, the parties drew up a written agreement which repeated the Appellant's promise to repurchase the stock, and established a time schedule for payments toward that purchase. The written agreement was never complied with by Hunter, and in 1969, Corbett initiated suit to recover the payments due. In 1975, the suit resulted in the entry of a judgment against Mr. Hunter, which was never satisfied.

Corbett initiated the present action requesting that the Court order a reconveyance of a condominium owned by Mr. and Mrs. Hunter to the husband alone, order that the judgment be a lien on that property, and order other relief, including an accounting and an order to prevent the Appellants from transferring or encumbering the property. The Plaintiff's request for such relief was grounded upon the theory that Mr. Hunter had engaged in fraudulent conveyances, prohibited by the Act referred to earlier. Plaintiff contended that these occurred when Mr. Hunter deposited his individual income into joint accounts with his wife, which account assets were used to buy entireties properties at

1. See the Act of May 21, 1921, P.L. 1045, No. 379, § 1 et seq., 39 P.S. § 351 et seq.

times when Hunter was insolvent relative to his debts to creditors. Of course, the Plaintiff was a significant creditor.

The lower court, as noted earlier, found that in 1967, while Mr. Hunter had unpaid debt to the Plaintiff in connection with the stock repurchase agreement, the Appellants purchased a residence in Bear Rocks, which was titled as a tenancy by the entireties. The mortgage payments were paid from the Appellants' joint bank account. Thereafter, in 1975, the Bear Rocks residence was sold, and the net proceeds used to purchase a condominium in Country Club Estates in Indiana County. Again monthly mortgage payments were made from the Appellants' joint accounts. At all times material, it was demonstrated that Mr. Hunter's individual income provided all of the funds in such accounts. The lower court held, in such circumstances, that since deposits were made into the accounts at a time when Mr. Hunter was insolvent as a result of his unpaid debts, both Appellants had to account to the Plaintiff for the value of Mr. Hunter's individual income traceable into the joint accounts and thereafter into the properties. Further, the court issued restrictions regarding the properties to keep them intact and thereby preserve Corbett's judgment interest, if any, in them.

Appellants maintain on this appeal that the lower court erred when it concluded that deposits of Mr. Hunter's income into accounts held jointly with his wife constituted fraudulent conveyances within the meaning of the Act. We must disagree. The Hunters first contend there was no "conveyance" within the purview of Section One of the Act. (39 P.S. § 351). That statutory provision defines a "conveyance" as including ". . . every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." Our courts have held that this broad definition of "conveyance" includes the deposit of a debtor's own funds into an entireties account. See *Taylor v. Kauf-*

*hold*, 379 Pa. 191, 108 A.2d 713 (1954); *Patterson v. Hopkins*, 247 Pa.Super. 163, 371 A.2d 1378 (1977). Consequently, we must reject the contention that no "conveyance" has occurred, within the meaning of Section One of the Act.

█ The Appellants also contend that there was no conveyance as contemplated by the Act because Mr. Hunter allegedly did not relinquish his "right, title, or interest" to his earnings as he made deposits into the joint accounts. In response to such contentions, it is appropriate to quote the lower court's discussion on these points, from its Opinion:

> ... The defendants exhibited some concern in their brief that the husband could not be deemed to have made a conveyance by his deposits into the joint bank accounts because he never relinquished control of the money. But again, the defendants have missed the point. What the Court is dealing with in a fraudulent conveyance contest is the reality of the situation. That reality is that the husband has placed his individual income beyond the reach of his creditors by his deposit into a joint account. The record shows sufficient evidence to raise the presumption that the husband supplied the funds in these accounts. The funds in these accounts are, then, subject to the claims of creditors under the Uniform Fraudulent Conveyance Act as well as under the common law execution remedy of creditors. . . .

> ... Moreover, the defendants' legal position becomes nonsensical when they want the Court to hold that because the husband did not relinquish complete control over the money he deposited into the joint accounts, neither the accounts nor the real property purchased with the money in the accounts can now be attached. If the husband's interest in the accounts was attachable in any year from 1966 through 1978, certainly the plaintiff has the right to trace those attachable assets to their present location. The object of a contest under the Uniform Fraudulent Conveyance Act is, after all, to subject the individual

assets of the debtor spouse to the claims of the creditors of the debtor spouse. To hold that there was no fraudulent conveyance because the husband retained some degree of control over his deposits would 1) allow the husband to exempt his own individual assets from the claims of his creditors, and 2) defeat the Uniform Fraudulent Conveyance Act itself.

We find such reasoning to be persuasive, and reject the Appellants' claims to the contrary.

■ In their final argument, the Appellants contend that the lower court erred in granting Appellee's request for relief because the funds which Mr. Hunter had on deposit in joint accounts with his wife were and are subject to execution, levy or attachment pursuant to the Pennsylvania Rules of Civil Procedure. In making such assertion, the Appellants rely upon the decision in *Patterson v. Hopkins*, supra. That case simply provides no support for such a contention, as is evident from the following excerpt from the decision: "With respect to execution sales, it is well settled that Pennsylvania subscribes to the majority view which regards entireties property as unavailable to creditors of one of the tenants." [citations omitted] 247 Pa.Super. at 171, 371 A.2d at 1382. The Court in *Patterson* went on to note that the rule was not immutable, and that such execution was permissable when it was established that the husband or wife conveys his or her individual property to a tenancy by the entireties *in a fraud of creditors*, the defrauded creditors may in such circumstances execute on the property which has been transferred. The point is clear that a *fraudulent conveyance must initially be established* prior to the right of execution being created as to such joint property. If no fraudulent conveyance is proven, a creditor has no right to execute in any manner contrary to the general rule recognized in *Patterson*, and other cases cited therein. Thus, we reject the Appellants' final claim of error.

The order of the lower court is hereby affirmed.