**In re Warren MEINEN, Debtor.**

**Mary Reitmeyer, Trustee, Plaintiff,**

v.

**Barbara Meinen and Warren Meinen, Defendants.**

**Bankruptcy No. 97–26170–MBM.**

**Adversary No. 98–2170–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania, Pittsburg Division.

March 26, 1999.

---

Gary William Short, Pittsburg, PA, for Debtor.

Mary Reitmeyer, Pittsburgh, PA, trustee.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE McCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **26th day** of **March, 1999,** upon consideration of (a) the initial and amended versions of an eight-count adversary complaint by Mary Reitmeyer, Chapter 7 trustee for the above-captioned

debtor and plaintiff herein, to avoid as fraudulent several alleged transfers from Warren Meinen, the instant debtor and defendant herein, to Barbara Meinen, his nondebtor spouse and a co-defendant herein, (b) the answers to the complaints by defendants, (c) defendants' motion for summary judgment in the instant adversary proceeding, (d) affidavits of defendants and James T. Healey (Healey), a creditor of the instant debtor with a claim of approximately $95,000, (e) the parties' briefs in support of their respective positions regarding defendants' summary judgment motion, (f) the transcript of a deposition taken of the instant debtor on November 24, 1992, in aid of execution by Healey on a judgment that he had previously obtained against the debtor (hereafter "the 1992 Execution Deposition"), and (g) the numerous exhibits attached by the parties to their pleadings and affidavits; and in recognition of the demand by defendant Barbara Meinen for a jury trial, which demand has heretofore not been waived by said defendant; it is **hereby ORDERED, ADJUDGED, AND DECREED** that (a) Barbara Meinen **POSSESSES** a right to trial by jury with respect to the first seven counts of plaintiff's adversary complaint, which right she has properly **INVOKED,** (b) this Court **MAY ENTER JUDGMENT** on defendants' instant dispositive motion for summary judgment notwithstanding the jury trial demand by Barbara Meinen, (c) summary judgment is **GRANTED in favor of defendants and against plaintiff** on Counts 1 through 5 of plaintiff's adversary complaint because (i) the applicable statute of limitations has passed with respect to each cause of action described in said counts, and (ii) said limitations periods

were not tolled, (d) summary judgment is also **GRANTED in favor of defendants and against plaintiff** on plaintiff's Counts 6 and 8, (e) defendants' summary judgment motion with respect to plaintiff's **Count 7 is GRANTED IN PART** and **DENIED IN PART,** and (f) the remainder of the instant adversary proceeding (i.e., that portion of plaintiff's Count 7 that is not disposed of herein by summary judgment) **SHALL BE RESOLVED** in the **U.S. District Court** for this district in light of the jury trial demand of Barbara Meinen.

## I.

 Defendant Barbara Meinen, in the caption of her answer to plaintiff's initial complaint, demands a jury trial with respect to the instant adversary proceeding. The Court concludes that Barbara Meinen possesses a right to a jury trial with respect to the first seven counts of plaintiff's adversary complaint because (a) her Seventh Amendment right to a jury trial is preserved in a bankruptcy context, see Fed.R.Bankr.P. 9015(a), 11 U.S.C.A. (West 1999); Fed.R.Civ.P. 38(a), 28 U.S.C.A. (West 1992), (b) the Seventh Amendment right to a jury trial extends to actions at law, see U.S. Const. amend. VII, (c) fraudulent conveyance actions, at least those involving money or personalty, constitute actions at law which are triable to a jury, see *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 36–44, 109 S.Ct. 2782, 2787–91, 106 L.Ed.2d 26 (1989), and (d) each of the fraudulent conveyance actions pursued by plaintiff in her instant complaint involve money or personalty.[1]

 Barbara Meinen's jury trial demand is timely and properly made because

---

1. The Court is of the opinion that a jury trial right does not exist with respect to plaintiff's Count 8, wherein plaintiff seeks to shift to defendants the obligation for payment of her costs to prosecute the instant adversary proceeding, because cost and fee shifting actions appear to be more in the nature of equitable, rather than legal, actions, which would mean that they are not triable to a jury. Fortunate-

ly for the Court, this particular issue becomes moot because (a) the Court can resolve dispositive motions such as those that seek summary judgment even if a jury trial right extends to the matters which are summarily decided, see infra p. 832, and (b) summary judgment is granted in defendants' favor on plaintiff's Count 8. See infra, p. 845.

the demand was indorsed upon her aforementioned answer, and it was thus necessarily served upon plaintiff within ten days of the last pleading directed to plaintiff's complaint. *See* Fed.R.Civ.P. 38(b), 28 U.S.C.A. (West 1998). Barbara Meinen, on page 9 of her answer to plaintiff's initial complaint, also objects, as is her right, to a jury trial in this Court regarding the instant adversary proceeding. *See* 28 U.S.C.A. § 157(e) (West 1998); Fed. R.Bankr.P. 9015(b), 11 U.S.C.A. (West 1999).

The Court also concludes that the instant jury trial demand, even though it was omitted from Barbara Meinen's answer to plaintiff's amended complaint, nevertheless (a) extends to each of plaintiff's counts asserted in both complaints for which a jury trial right exists (i.e., plaintiff's first seven counts), and (b) continues at this time. The Court concludes that the instant jury trial demand extends to plaintiff's first seven counts because (a) "[i]n the demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable," *see* Fed.R.Civ.P. 38(c), 28 U.S.C.A. (West 1992), and (b) the instant demand did not specify for which particular issues it was asserted, instead merely representing that Barbara Meinen demanded a jury trial. The Court must presume that Barbara Meinen's jury trial demand, as well as her objection to such a trial in this Court, continues at this time even though she failed to formally renew her desire for a jury trial in her answer to plaintiff's amended complaint because (a) "[a] demand for trial by jury ... may not be withdrawn without the consent of the parties," Fed.R.Civ.P. 38(d), 28 U.S.C.A. (West 1998), and (b) the Court is neither aware of a formal withdrawal by Barbara

Meinen of her jury trial demand nor a consent thereto by plaintiff. Because the instant jury trial demand remains in effect, plaintiff's fraudulent conveyance actions thus must be tried before a jury. Given this last conclusion, and since only one trial will be had regarding plaintiff's complaint, the Court can conclude that it matters not that (a) defendant Warren Meinen failed to make a similar demand for a jury trial, and (b) he has thus irrevocably waived his right to a jury trial with respect to the instant adversary proceeding. *See* F.R.C.P. 38(d), 28 U.S.C.A.

◼ Notwithstanding Barbara Meinen's jury trial demand and her objection to a jury trial in this Court, the Court may enter an order or judgment on defendants' instant motion for summary judgment because (a) the instant adversary proceeding is a core proceeding since plaintiff, via her complaint, seeks to "determine, avoid, and recover fraudulent conveyances," *see* 28 U.S.C.A. § 157(b)(2)(H) (West 1993), (b) bankruptcy courts may hear and determine, as well as enter orders and judgments in, core proceedings, *see* 28 U.S.C.A. § 157(b)(1) (West 1993), and (c) bankruptcy courts can, at least in core proceedings, rule on dispositive motions, such as the instant summary judgment motion, without depriving a party of his or her jury trial right. *See City Fire Equipment Co., Inc. v. Ansul Fire Protection Wormald U.S., Inc.*, 125 B.R. 645, 649–50 (N.D.Ala.1989); *In re M & L Business Machine Co., Inc.*, 159 B.R. 932, 934–35 (D.Colo.1993); *Stein v. Miller*, 158 B.R. 876, 879–80 (S.D.Fla.1993); *In re Federated Department Stores, Inc.*, 144 B.R. 993, 997 (Bankr.S.D.Ohio 1992); *In re Nady*, 138 B.R. 608, 610 (D.Nev.1992); *In re After Six, Inc.*, 1995 WL 108209 at *7 (Bankr.E.D.Pa.1995).[2]

---

2. The Court is aware, as are other courts, that "[t]here is some disagreement whether, in *non-core* proceedings in which there is a right to a jury trial, the bankruptcy court may rule on dispositive motions." *M & L Business Machine*, 159 B.R. at 935 n. 1 (emphasis added). However, and fortunately for this Court, that precise issue is not presently before the Court because (a) the instant adversary proceeding deals exclusively with core matters, and (b) this Court can enter orders and judgments in core proceedings.

Because the Court has the authority to rule on dispositive motions in the instant adversary proceeding, it does so as set forth in the ensuing sections of this order. In particular, the Court grants summary judgment in defendants' favor on Counts 1–6 and 8 of plaintiff's amended complaint. As a result, Barbara Meinen's jury trial demand with respect to said counts is rendered moot. As for plaintiff's Count 7, the Court grants in part and denies in part defendants' summary judgment motion at this time, which means that a portion of Count 7 shall be resolved by the U.S. District Court for this district so as not to violate Barbara Meinen's properly-invoked jury trial right. However, in partially denying summary judgment on plaintiff's Count 7, the Court makes legal conclusions, thereby also rendering moot Barbara Meinen's jury trial demand with respect to the issues so resolved.

## II.

In plaintiff's Counts 1–5 plaintiff seeks to avoid as fraudulent the debtor's transfer of (a) a 1965 McKee race car (hereafter "the McKee") to Barbara Meinen, which transfer (i) defendants allege occurred on August 15, 1990, and (ii) plaintiff apparently alleges occurred on November 13, 1991 (Count I), (b) $54,000 in April 1992 to Barbara Meinen, which sum represents a portion of the proceeds from the subsequent sale of the McKee to an unrelated third party (Count 1), (c) $9,000 on March 12, 1992, to both himself and Barbara Meinen via a deposit into a bank account jointly held by both defendants, which amount also allegedly constitutes proceeds from the second sale of the McKee (Count 2), (d) $2,000 to Barbara Meinen, which amount constitutes the hand money proceeds received by the debtor for the subsequent sale of the McKee to an unrelated third party, and which transfer plaintiff apparently alleges occurred during 1992 (Count 3), (e) $1,561.42 to Barbara Meinen, which amount allegedly constitutes proceeds from the sale of several other vehicles, and which transfer plaintiff apparent-

ly alleges occurred during 1992 (Count 4), and (f) a new 1993 Chevrolet Sedan on or about October 9, 1992, to both himself and Barbara Meinen (Count 5).

Plaintiff, in particular, proceeds with respect to each of the above counts under 11 U.S.C. § 544(b), which authorizes plaintiff to "avoid any transfer of an interest of the debtor in property ... that is voidable *under applicable law by a creditor holding an unsecured claim.*" 11 U.S.C.A. § 544(b) (West 1999). Plaintiff's avoidance right under § 544(b) is entirely derivative of that of an actual unsecured creditor, *see* 5 *Collier on Bankruptcy*, para. 544.09[1] at 544–16 (Bender 1998), and, in this particular case, such avoidance right derives from that asserted by Healey, who is concededly an unsecured creditor of the debtor. *See* Pl.'s Compl., para. 4; Defs.' Answer, para. 4; Deb.'s Aff., para. 17–18. Healey asserts that he may avoid the aforementioned transfers as fraudulent conveyances under the Pennsylvania Uniform Fraudulent Conveyance Act (hereafter "Pa. UFCA"), which law (a) was previously codified at 39 Pa.S. §§ 351–363, and (b) was effective until, and thus applies to any pertinent transfers that occurred prior to, February 1, 1994, which is when the Pennsylvania Uniform Fraudulent Transfer Act (hereafter "Pa. UFTA") became effective. *See* Preface to 12 Pa.Cons.Stat.Ann. §§ 5101–5110 (Purdon's 1998).

Of course, plaintiff, since her power under § 544(b) is derivative of Healey's, must be able to survive, as Healey would have to, any defenses that can be, and which are, asserted with regard to Healey's causes of action under the Pa. UFCA. *See* 5 *Collier on Bankruptcy*, para. 544.09[3] at 544–18 to 19. One such defense which defendants assert with respect to each of plaintiff's/Healey's first five counts described above is the passage of the pertinent statute of limitations, which limitations period both parties correctly ascertain to be two years. *See* 42 Pa. C.S.A. § 5524(7) (Purdon's 1998); *In re*

*Sverica Acquisition Corp., Inc.,* 179 B.R. 457, 467–70 (Bankr.E.D.Pa.1995); *In re Ambulatory Medical & Surgical Health Care, Inc.,* 187 B.R. 888, 901 (Bankr. W.D.Pa.1995). Because each of the transfers described in plaintiff's first five counts occurred well over two years prior to plaintiff's filing of her instant adversary complaint, plaintiff's pursuit of such transfers under the Pa. UFCA are barred absent grounds for a tolling of the limitations period. However, plaintiff maintains that the limitations period should be tolled with respect to each of her first five counts because, according to plaintiff, (a) statutes of limitation in Pennsylvania, as a matter of law, are tolled " '[i]f fraud or concealment by [a] defendant causes [a] plaintiff to relax [his or her] vigilance or deviate from [the] right of inquiry,' " (b) such fraud or concealment sufficient to toll a limitations period, as a matter of law, need not be intentional, which means that unintentional deception is sufficient to toll a limitations period, (c) subsequent due diligence on a plaintiff's part in discovering claims at issue is, as a matter of law, excused if the plaintiff has successfully established that a defendant intentionally or unintentionally concealed said claims from said plaintiff, (d) the debtor either fraudulently or unintentionally concealed material information from Healey at the 1992 Execution Deposition,[3] which concealment, in turn, caused Healey to refrain from further investigation into a basis for the claims that are presently asserted in plaintiff's first five counts, and (e) Barbara Meinen, via some sort of agency or privity theory, is also, as a matter of law, estopped from asserting the protection of the two-year limitations period. Defendants, in response, contend that the limitations period should not be tolled for any of plaintiff's first five counts because, according to defendants, (a) statutes of limitation in Pennsylvania, as a matter of law, are tolled, in the instance when a wrongdoer is guilty of a subsequent act(s) of fraudulent concealment or unintentional deception, only until a plaintiff knows or, using reasonable diligence, should have known of the claims at issue, and (b) Healey did not use reasonable diligence in discovering the claims which are now set forth in plaintiff's first five counts.

■ After canvassing caselaw on the subject, the Court makes the following pertinent conclusions as to the present state of the law regarding fraudulent concealment and the tolling of statutes of limitation in Pennsylvania:

(a) Plaintiff is correct, and the Court does not understand defendants to dispute, that a doctrine of fraudulent concealment exists in Pennsylvania such that statutes of limitation are tolled "where[,] 'through fraud or concealment[,] the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry.' " *See Bohus v. Beloff,* 950 F.2d 919, 925 (3rd Cir.1991) (citing *Ciccarelli v. Carey Can. Mines, Ltd.,* 757 F.2d 548, 556 (3rd Cir.1985)).

(b) Plaintiff is also correct, and the Court does not understand defendants to dispute, that fraud or concealment sufficient to toll a limitations period need not be intentional. *See Id.* (citing *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964)).

(c) Defendants are correct that, even after "fraudulent concealment [on a wrongdoer's part] is established, [be it intentional or unintentional,] 'the statute [of limitations] is [only] tolled until the plaintiff[ ] knew or[,] using reasonable

---

**3.** Among the matters alleged to have been concealed by the debtor at the 1992 Execution Deposition are (a) the conveyance by the debtor of the McKee to Barbara Meinen, (b) other conveyances by the debtor to Barbara Meinen, such as the 1993 Chevrolet Sedan, (c) that he received compensation for his services as executor of a probate estate, (d) that he transferred said compensation to Barbara Meinen for no consideration, and (e) that he received more from the sale of the McKee than merely direct expenses incurred by him in the ultimate sale of said vehicle.

diligence[,] should have known of the claim.'" *Id.* at 925–26 (citing *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3rd Cir.1990) (quoting *Urland v. Merrell–Dow Pharmaceuticals, Inc.*, 822 F.2d 1268, 1272 (3rd Cir.1987))). Therefore, plaintiff mistakenly labors under the presumption that subsequent due diligence on a plaintiff's part in discovering claims at issue is excused if the plaintiff has successfully established that a defendant intentionally or unintentionally concealed said claims from said plaintiff. However, the Court notes that this particular statement of the law, both technically and substantively, addresses only the situation where a limitations period has first been tolled and the issue is for how long it continues to be tolled.

(d) Because fraud or concealment sufficient to toll a limitations period need not be intentional, any misrepresentation made by a wrongdoer will serve to toll a limitations period even if it was made without an intent by the wrongdoer that it should be acted upon. *See Gee v. CBS, Inc.*, 471 F.Supp. 600, 623 (E.D.Pa.1979). However, none of the other elements typically necessary to establish a claim for fraud are relaxed, *see Id.*, which means that a statute of limitations cannot be tolled under the doctrine of fraudulent concealment/unintentional deception unless a wrongdoer has conveyed to a plaintiff a knowing, material misrepresentation *upon which said plaintiff reasonably, and without knowledge, acted or relied upon. See Id.* at 622–23 (citing *Southern Development Co. v. Silva*, 125 U.S. 247, 8 S.Ct. 881, 31 L.Ed. 678 (1888), for the other necessary elements of a claim for fraud). Thus, if a plaintiff's reliance upon a misrepresentation by a wrongdoer is not reasonable, then said misrepresentation cannot form the basis for a tolling of an applicable statute of limitations.

(e) The doctrine of fraudulent concealment only operates to toll a statute of limitations "where[,] 'through fraud or concealment[,] the defendant *causes the plaintiff to relax his vigilance or deviate from the right of inquiry.'"* Therefore, a limitations period is not tolled by virtue of any fraud or concealment unless said fraud or concealment is the actual cause of a plaintiff's relaxation from vigilance or deviation from inquiry. Thus, if a plaintiff, who is faced with material representations from a wrongdoer, *unreasonably* refrains from further diligent investigation into a basis for its claims, then (i) said representations, regardless of whether they prove to be false and to have been fraudulently or deceptively made, will not be deemed to have caused plaintiff's relaxation from vigilance or deviation from inquiry, and (ii) an applicable limitations period will not be tolled on the basis of said representations. *See, e.g., Joyce v. Mankham*, 318 Pa.Super. 561, 465 A.2d 696, 700 (1983); *Ritter v. Theodore Pendergrass Teddy Bear Productions, Inc.*, 356 Pa.Super. 422, 514 A.2d 930, 935 (1986); *Jewish Employment and Vocational Service v. Commonwealth, Department of Public Welfare*, 117 Pa. Cmwlth. 581, 544 A.2d 95, 98 (1988).

(f) The relationship between, and circumstances of, the parties are important, if not vital, considerations when determining whether (i) a plaintiff's reliance upon a misrepresentation by a wrongdoer is reasonable, and (ii) said misrepresentation caused plaintiff to relax his or her vigilance or deviate from the right of inquiry. *Cf. Hedges v. Primavera*, 218 F.Supp. 797, 801 (E.D.Pa. 1963) (the complementary tolling doctrine commonly referred to as the "discovery rule" should also be applied "in light of the relation and circumstances of the parties").

Applying the law as set forth above to plaintiff's first five counts, the Court concludes that it must rule, at the summary judgment stage, that (a) Hea-

ley's reliance upon the representations made by, or the omissions of, the debtor at the 1992 Execution Deposition was not reasonable, (b) said deposition representations or omissions by the debtor were not the cause of Healey's relaxation from vigilance or deviation from inquiry into the claims which now comprise plaintiff's first five counts, and (c) the fraudulent concealment doctrine does not operate to toll, not even for one day, the two-year statute of limitations which applies to said counts. Of course, since the Court decides that the pertinent limitations period for plaintiff's first five counts is not tolled for even one day, the Court is necessarily relieved of any additional consideration regarding when the limitations period should have subsequently commenced running again. Furthermore, the Court's decision renders irrelevant plaintiff's mistaken presumption regarding that portion of the status of the law discussed in paragraph (c) above.

The Court's decision is proper at the summary judgment stage because (a) "[w]here the facts are neither disputed nor close, the decision on reasonableness is made by the court as a matter of law, instead of by the jury as a matter of fact," *Bickell v. Stein,* 291 Pa.Super. 145, 435 A.2d 610, 612 (1981) (this test is applied to the complementary tolling doctrine commonly referred to as the "discovery rule"), (b) the test set forth in *Bickell* is at least as stringent as the standard utilized by a court in granting summary judgment, *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Armbruster v. Unisys Corporation,* 32 F.3d 768, 777 (3rd Cir.1994), (c) even after deciding any factual disputes in plaintiff's favor, the Court concludes that said facts cannot possibly support either a finding that (i) Healey's aforementioned reliance was reasonable, or (ii) the debtor's Execution Deposition representations caused Healey to relax his vigilance or deviate from his right of inquiry, and (d) the pertinent two-year limitations period, as a matter of law, thus cannot be tolled for any of plaintiff's first five counts on the basis of the fraudulent concealment doctrine. The Court's decision that (i) Healey's aforementioned reliance was not reasonable, and (ii) the debtor's Execution Deposition representations did not cause Healey to relax his vigilance or deviate from his right of inquiry, is compelled by a consideration of the relationship between, and circumstances of, Healey and defendants as of the date of the Execution Deposition. In particular, as of November 24, 1992, which is when the Execution Deposition was taken, Healey and the debtor occupied, both technically and in fact, intense adversarial positions vis-a-vis one another because:

(a) Healey had obtained a prior arbitration award against the debtor on December 23, 1991, *see* Deb.'s Aff., para. 9; Healey's Aff., para. 5, which award (i) Healey subsequently had reduced to judgment on February 14, 1992, *see* Deb.'s Aff., para. 11, and (ii) arose from particularly contentious litigation between Healey and the debtor regarding the breakup of their business relationship, *see* Deb.'s Aff., para. 4, 8; Healey's Aff., para. 2, 4;

(b) Healey took the Execution Deposition as an aid in his subsequent execution upon assets owned by the debtor, which execution became necessary since the debtor, as of the date of said deposition, refused to voluntarily satisfy said judgment debt to Healey, *see* Deb.'s Aff., para. 13; Healey's Aff., para. 26; and

(c) Healey and the debtor, as both appear to concede, engaged in a confrontation between themselves approximately five months prior to the Execution Deposition, at which time (i) the debtor told Healey that he had already transferred everything into his wife's name (ie., Barbara Meinen) but Healey could waste his time legally if he wished, and (ii) Healey, if he did not orally threaten to kill the debtor, at least expressed his opinion of the debtor, which opinion the Court can presume, given the obvi-

ous animosity between the two men, was anything but kind. *See* Deb.'s Aff., para. 12; Defs.' Answer Mot. Compel 2004 Exam. & Req. Protective Order, para. 6; Healey's Obj.Req. Protective Order, para. 9.

Furthermore, Healey was aware, as a result of the Execution Deposition, that the debtor had conveyed to Barbara Meinen, at some point prior to November 24, 1992, and for no consideration, a 1982 Jaguar automobile and a 1977 Harley–Davidson motorcycle. *See* Execution Dep. at 16–18. Thus, Healey was on notice at that time that the debtor had previously engaged in at least two constructive fraudulent conveyances to Barbara Meinen.

Given the just-described relationship between, and circumstances of, Healey and defendants as of, or immediately subsequent to, the date of the Execution Deposition, the Court cannot conclude that a reasonable person could find that Healey's blind reliance upon the Execution Deposition testimony of the debtor was reasonable notwithstanding that said testimony was given by the debtor under oath. Instead, and to use the parlance of plaintiff found in the last full paragraph on page 36 of her brief, the Court must adjudge as outrageous plaintiff's position that Mr. Healey, given the aforementioned relationship and circumstances of the party, nevertheless had reason to blindly rely upon sworn testimony given by the instant debtor. Most certainly, and at a minimum, Healey should have followed up the Execution Deposition with, *inter alia,* additional depositions of Barbara Meinen and the beneficiary of the probate estate alluded to in footnote 3 herein, which beneficiary (a) the debtor alleged was also a beneficiary of an oral inter vivos trust administered by the debtor, and (b) debtor's counsel offered to identify via documentation within one week subsequent to the Execution Deposition. *See* Execution Dep. at 26–27. Had Healey taken such minimal steps, as were ultimately taken by Healey's present counsel who also represents the instant plaintiff, then a basis for the claims contained in plaintiff's first five counts would have been revealed in a timely manner.

The Court must also conclude that a reasonable person could only find that Healey's failure to timely discover the aforementioned claims is attributable not to the substance of the debtor's Execution Deposition testimony, but rather to Healey's unreasonable failure to undertake such minimal additional investigation. Indeed, one can only conclude that the aforementioned relationship between, and circumstances of, Healey and defendants as of, or immediately subsequent to, the date of the Execution Deposition should have, by themselves, caused Healey to increase, *rather than to relax, his vigilance and to employ, rather than to deviate from, his right of inquiry.*

Therefore, the fraudulent concealment doctrine does not apply to toll the two-year statute of limitations with respect to the actions contained in plaintiff's first five counts, which means that plaintiff is barred from further pursuing said actions against either defendant. Consequently, summary judgment is **GRANTED in favor of defendants and against plaintiff** on **Counts 1 through 5** of plaintiff's adversary complaint.[4]

### III.

■ In plaintiff's Count 6 plaintiff seeks to avoid as fraudulent the debtor's alleged transfer on February 13, 1996, of

---

4. Because the Court concludes that plaintiff is barred from pursuing her first five counts by virtue of the passage of the relevant statute of limitations with respect to the actions asserted in said counts, the Court need not, and thus will not, address (a) the merits, or the substance, of plaintiff's first five counts, (b) defendants' defense that the transfer of the McKee from the debtor to Barbara Meinen was not fraudulent because the debtor never owned an equitable interest in said vehicle given the existence of an alleged oral inter vivos trust, and (c) the merits of any other defense that defendants asserted with respect to plaintiff's first five counts.

the lessor's residual interest in a 1993 Chevrolet Fleetside pickup truck (hereafter "the Fleetside") to both himself and Barbara Meinen. The parties agree that (a) the debtor originally leased the Fleetside from a dealership by the name of Castriota Chevrolet on May 4, 1993, see Pl.'s Am.Compl., para. 74; Defs.' Brief at 36 & Deb.'s Aff., para. 24, (b) the debtor, as part of the original lease transaction, traded in a 1988 Chevrolet S–10 pickup truck (hereafter "the S–10"), see Id., (c) the S–10 was owned by the debtor and not jointly with Barbara Meinen on May 4, 1993, see Execution Dep. at 12–13, and (d) defendants jointly purchased the Fleetside on February 13, 1996, for $9,986.71, which amount defendants financed via a loan. See Pl.'s Am.Compl., para. 77–78; Defs.' Answer, para. 77–78.

Defendants defend against plaintiff's Count 6 by asserting that (a) both defendants were legally the lessees of the Fleetside during the term of the lease, (b) any transfer by the debtor to himself and Barbara Meinen thus necessarily occurred at the inception of said lease in 1993, (c) any transfer that occurred on February 13, 1996, thus could not have been constructively fraudulent because, if anything was transferred at that time, it must have been from defendants jointly to themselves, and (d) the 1993 transfer cannot be attacked any longer since the statute of limitations has passed and Healey was on notice of said transfer in 1993, thereby eliminating any possibility of a tolling of the limitations period. In both Count 6 of plaintiff's amended complaint and that portion of plaintiff's brief that addresses said count, plaintiff appears to concede, as well she should, that Healey can no longer attack as fraudulent, and thus neither can she, any transfer by the debtor of the S–10 in 1993. Such a transfer by the debtor would now be immune from attack as fraudulent because (a) it occurred prior to February 1, 1994, which means that an avoidance action with respect to said transfer is subject to the same two-year limitations period which applied to the transfers in question in plaintiff's first five counts, see supra pp. 833–34 (fraudulent conveyance actions that accrued prior to February 1, 1994, are governed by the Pa. UFCA, and the statute of limitations for actions under the UFCA is two years), (b) said two-year limitations period obviously would have expired prior to plaintiff's filing of the instant complaint, and (c) said limitations period would not be tolled for, inter alia, the same reasons that said period was not tolled with respect to the transfers in question in plaintiff's first five counts. However, plaintiff contends that (a) only the debtor, rather than both the debtor and Barbara Meinen, was the lessee of the Fleetside during the lease term since only the debtor's name appears as lessee on the title to the Fleetside prior to defendants' 1996 joint purchase thereof, (b) the debtor thus did not transfer anything to himself and Barbara Meinen in 1993, (c) the debtor, by himself, owned a portion of the Fleetside both at the inception and as of the termination of the lease thereof, which ownership interest the debtor obtained by virtue of his trade-in of the unencumbered value of the S–10 as part of the initial lease transaction, (d) this ownership interest by the debtor in the Fleetside constitutes, or is contained within, the lessor's (i.e., Castriota Chevrolet) residual interest in the Fleetside, (e) the unencumbered value of the S–10 was approximately $5,000 as of May 4, 1993, although defendants assert that said unencumbered value was between $2,500 to $3,000, (f) the debtor must have transferred property to both himself and Barbara Meinen in 1996 since he owned, by himself, the aforementioned $5,000 interest in the Fleetside prior to February 13, 1996, and, after said date, title and ownership to the Fleetside was in both defendants' names, and (g) the actual subject of the transfer by the debtor to himself and Barbara Meinen in 1996 was the $5,000 portion of the lessor's residual interest.

The Court shall grant summary judgment in defendants' favor on plaintiff's

Count 6 because several significant flaws exist in plaintiff's legal reasoning in support of said count. In particular:

(a) All that the debtor obtained via the initial lease transaction in 1993 was a right to possess, and enjoy the use of, the Fleetside for the term of the lease. *See* 13 Pa.C.S.A. § 2A103(a) (Purdon's 1998) ("Lease" is defined as "[a] transfer of the right to possession and use of goods for a term"). Thus, the debtor, by virtue of his trade-in of the unencumbered value of the S–10 as part of the initial lease of the Fleetside, did not thereby obtain an ownership interest in the leased Fleetside. In fact, during the term of the lease, the debtor never owned an interest in the leased Fleetside. *See Id.;* 13 Pa. C.S.A. § 2A302 (Purdon's 1998). Instead, full ownership of the Fleetside rested with the lessor, Castriota Chevrolet, during the term of the lease. *See Id.* The fact that the debtor's name appears on the title to the Fleetside during the lease term is appropriately tempered by his designation therein as a mere lessee rather than the owner of said vehicle. Moreover, the debtor's trade-in of the unencumbered value of the S–10 at the lease's inception garnered the debtor, as return consideration from Castriota Chevrolet, not an ownership interest in the Fleetside but rather a commensurate reduction in the total lease payments that the debtor became obligated to make to Castriota Chevrolet.

(b) To the Court it seems axiomatic, and thus the Court agrees with plaintiff, that a lessor's residual interest in leased property is a valuable property right. Plaintiff is also correct that the subject of the transfer to the debtor and Barbara Meinen on February 13, 1996, was, in fact, the lessor's residual interest in the Fleetside since (a) a "lessor's residual interest" is defined as "[t]he lessor's interest in the goods after expiration, termination or cancellation of the lease contract," 13 Pa. C.S.A. § 2A103(a) (Purdon's 1998) (definition of "lessor's residual interest"), and (b) the only remaining interest in the Fleetside as of February 13, 1996, was, by necessity, that which the lessor possessed upon termination of the Fleetside lease. Unfortunately for plaintiff, it was not the debtor but Castriota Chevrolet, the lessor and owner of the residual interest in the Fleetside, who transferred said residual interest to the debtor and Barbara Meinen on February 13, 1996. This conclusion follows not only from the definition of "lessor's residual interest" but also from the recognition that, as set forth in the immediately preceding paragraph herein, the debtor never possessed an ownership interest in the Fleetside prior to his purchase, along with Barbara Meinen, of Castriota Chevrolet's residual interest in said vehicle on February 13, 1996.

(c) The value of Castriota Chevrolet's residual interest in the Fleetside as of February 13, 1996, was not the $5,000 amount ascribed thereto by plaintiff, but rather the $9,986.71 purchase price which both defendants paid via financing. As explained above, the alleged $5,000 trade-in value of the S–10 was used by the debtor to satisfy a commensurate portion of the total lease obligation incurred as a result of the 1993 lease of the Fleetside. Because the aforementioned trade-in value of the S–10 was used to finance a portion of the obligation for leasing the Fleetside between May 4, 1993 and February 13, 1996, it is certainly appropriate, if not necessary, to conclude that said trade-in value, to the extent that it can be said to have been reflected in the Fleetside, was exhausted by the time that defendants purchased Castriota Chevrolet's residual interest in said vehicle. As a result, Castriota Chevrolet solely owned, both technically and substantively under any theory, the $9,986.71 in remaining value in the

Fleetside as of February 13, 1996. Because defendants used joint funds, which were apparently borrowed, to purchase said remaining value of $9,986.71, a fraudulent conveyance did not occur as a result of said purchase.

Consequently, summary judgment is **GRANTED in favor of defendants and against plaintiff** on plaintiff's **Count 6.**

### IV.

Defendants concede that, from August 26, 1993, to the present, the debtor deposited all or a substantial part of his own personal earnings into bank accounts, either checking or savings, with Mellon Bank, PNC Bank, and Dollar Bank, *see* Pl.'s Am.Compl., para. 81, 85–87; Defs.' Answer, para. 81, 85–87; Deb.'s Aff., para. 25; B. Meinen's Aff., para. 5, which bank accounts admittedly were jointly owned by the debtor and Barbara Meinen. *See* Deb.'s Aff., para. 25; B. Meinen's Aff., para. 5. Defendants also concede that all of the funds placed into these joint bank accounts after August 26, 1993, were solely contributed by the debtor from his individual earnings. *See* Pl.'s Am.Compl., para. 84; Defs.' Answer, para. 84. Plaintiff, in her Count 7, attacks as fraudulent under both the Pa. UFCA and the Pa. UFTA all of the aforesaid deposits by the debtor between August 26, 1993 and August 26, 1997, which is the date upon which the instant bankruptcy case was commenced.[5]

Case authority in Pennsylvania prior to the February 1, 1994 effective date of the Pa. UFTA makes clear that a debtor's deposit of his or her own funds into a bank account owned jointly with his or her spouse as tenants by the entireties constitutes a "conveyance" as that term is defined in the Pa. UFCA. *See Corbett v. Hunter,* 292 Pa.Super. 123, 436 A.2d 1036, 1037–38 (1981); *Garden State Standardbred Sales Co., Inc. v. Seese,* 417 Pa.Super. 15, 611 A.2d 1239, 1243 (1992). Such a deposit also clearly constitutes a "transfer" as that term is defined in the Pa. UFTA because (a) a "transfer" under the Pa. UFTA is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset," 12 Pa. C.S.A. § 5101(b) (Purdon's 1998) (definition of "transfer"), (b) an "asset" for purposes of the Pa. UFTA "does not include . . . an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant," *Id.* (definition of "asset"), (c) entireties property in Pennsylvania "is unavailable to satisfy the claims of the creditor of only one of the tenants," *Garden State Standardbred,* 611 A.2d at 1243; *Stinner v. Stinner,* 300 Pa.Super. 351, 446 A.2d 651, 652 (1982) (citing *Patterson v. Hopkins,* 247 Pa.Super. 163, 371 A.2d 1378, 1382 (1977)), which means that entireties property in Pennsylvania does not constitute an "asset" under the Pa. UFTA, (d) the conversion by a debtor of his or her own property, which would constitute an "asset" of said debtor for purposes of the Pa. UFTA, into entireties property, which would not constitute such an "asset" of said debtor, is thus a means for said debtor to dispose of, or

---

**5.** Although the point is not raised in plaintiff's amended complaint, defendants' answers thereto, or either party's brief, both defendants concede, in their respective affidavits dated September 15, 1998, that, for a short period of approximately ten months within the four-year period from August 26, 1993 to August 26, 1997, the PNC account was actually held in the sole name of Barbara Meinen. *See* Deb.'s Aff., para. 25; B. Meinen's Aff., para. 5. Nevertheless, the Court may, and thus will, proceed to analyze plaintiff's Count 7 as if the PNC account was jointly owned throughout the period in question because of (a) the relative brevity of the period during which the PNC account was not jointly owned, and (b) the legal insignificance of the distinction in the instant matter given that (i) deposits by an insolvent debtor into a bank account owned entirely by someone else for no consideration are obviously fraudulent as to creditors, *see infra* pp. 840–41, and (ii) similar deposits into an account which is jointly owned by a debtor and someone else are likewise deemed to be fraudulent, as explained below. *See infra,* pp. 840–41.

part with, his or her own assets, which means that said conversion into entireties property constitutes a transfer of said debtor's property under the Pa. UFTA, and (e) a debtor, by depositing his or her own funds into an entireties bank account, is converting said funds into entireties property and, thereby, transferring said property for purposes of the Pa. UFTA.

Since, as established in the preceding paragraph, a deposit by a debtor of his or her own funds into an entireties account constitutes a conveyance under the Pa. UFCA or a transfer under the Pa. UFTA, such a deposit is fraudulent as to creditors if (a) a debtor was insolvent at the time of said deposit or was thereby rendered insolvent, and (b) said debtor did not receive either "fair consideration" (Pa. UFCA) or a "reasonably equivalent value" (Pa. UFTA) in return for said conveyance or transfer. *See Garden State Standardbred,* 611 A.2d at 1243 (quoting 39 Pa.S. § 354 for the Pa. UFCA); *Stinner,* 446 A.2d at 652 (same); 12 Pa.C.S.A. §§ 5104(a)(2), 5105 (Purdon's 1998) (for the Pa. UFTA). Therefore, plaintiff can succeed in her Count 7 if (a) the joint bank accounts owned by defendants are held by them as tenants by the entirety, (b) the debtor was insolvent when he made, or was rendered insolvent by, each deposit of his own funds into said joint accounts, (c) the debtor did not receive "fair consideration" or a "reasonably equivalent value" in return for his deposits into the joint accounts, and (d) defendants cannot assert any successful affirmative defenses to plaintiff's Count 7.

With respect to any deposits made by the debtor prior to February 1, 1994, into defendants' joint bank accounts, defendants assert as a defense the passage of the pertinent statute of limitations, which limitations period both parties agree is two years since the Pa. UFCA applies to said deposits. *See supra* pp. 833–34. This defense is successfully asserted by defendants because (a) said two-year limitations period obviously expired prior to plaintiff's filing of the instant amended complaint on July 14, 1998, and (b) said limitations period is not tolled (i) for, *inter alia,* the same reasons that said period was not tolled with respect to the transfers in question in plaintiff's first five counts, and (ii) since Healey was notified at the Execution Deposition that defendants always maintained only joint bank accounts. *See* Execution Dep. at 8–9. Therefore, summary judgment shall be granted in favor of defendants and against plaintiff on plaintiff's Count 7 with respect to any deposits made by the debtor into defendants' joint bank accounts prior to February 1, 1994. However, defendants do not raise a statute of limitations defense with respect to similar deposits made by the debtor on or after February 1, 1994, which transfers must therefore be subjected to an analysis under the Pa. UFTA.[6]

The Court shall presume, at least for purposes of defendants' instant summary judgment motion, that defendants' joint bank accounts were, and are, owned by them as tenants by the entirety because (a) a presumption exists in Pennsylvania that married couples own joint bank accounts as tenants by the entirety, *see* 18 P.L.E. *Husband and Wife* § 23 at 28–29 (West 1988), (b) the Court, after reviewing defendants' pleadings and other submissions, as well as the debtor's bankruptcy schedules, is unable to locate a representation by defendants that their joint bank accounts constitute anything other than entireties property, and (c) material factual disputes, to the extent that they exist, must be decided in favor of the instant plaintiff as the nonmoving party in the

---

6. The Court notes that such a defense would not have even been possible for any deposits made after July 14, 1994, because (a) the Pa. UFTA applies to deposits that are made on or after February 1, 1994, *see supra* pp. 833–34, (b) the statute of limitations under the Pa. UFTA is four years subsequent to the date of any transfer, see 12 Pa.C.S.A. § 5109 (Purdon's 1998), and (c) plaintiff brought her Count 7 on or about July 14, 1998.

instant motion for summary judgment.[7] *See In re ACME Music Co., Inc.*, 196 B.R. 925, 928 (Bankr.W.D.Pa.1996). The Court shall also presume, at least for purposes of defendants' instant summary judgment motion, that the debtor was insolvent when he made, or was rendered insolvent by, each deposit of his own funds into defendants' joint accounts because (a) defendants have failed to deny and/or establish the debtor's solvency as of the time of, or subsequent to, his deposits into defendants' joint bank accounts, (b) defendants bear the burden of proving the debtor's solvency at the pertinent points in time, see 12 Pa.C.S.A. § 5102(b) (Purdon's 1998); *Garden State Standardbred*, 611 A.2d at 1243; *Patterson*, 371 A.2d at 1382–83, and (c) material factual disputes, to the extent that they exist, must, as explained above, be decided in favor of the instant plaintiff as the nonmoving party in the instant motion for summary judgment. Thus, the sole remaining issues are whether (a) the debtor individually received a "reasonably equivalent value" in return for his deposits into defendants' joint bank accounts on or after February 1, 1994, and (b) defendants can succeed on any affirmative defense that they have raised with respect to plaintiff's Count 7 as it applies to said deposits.

■ Defendants contend that the debtor's deposits into defendants' joint bank accounts on or after February 1, 1994, are not fraudulent because each such deposit was then utilized by defendants to fund payment of the debtor's reasonable and necessary household expenses. In support of their position, defendants cite to *Welker v. Strohmeyer*, 45 Berks 21 (1952), and *Watters v. DeMilio*, 16 Pa.D. & C.2d 747 (1957). Both of these cases can indeed be cited for the proposition that an insolvent debtor's deposits of his or her own funds into an entireties account are not fraudulent as to said debtor's creditors to the extent that said funds are then used to satisfy reasonable and necessary expenses for the maintenance of said debtor's family. *See Welker*, 45 Berks at 29–30; *Watters*, 16 Pa.D. & C.2d at 752. This Court concludes that the above proposition for which defendants cite these two cases still constitutes good law in Pennsylvania because (a) the two cases have not, as of the present time, been either explicitly or implicitly overruled by any subsequent case,[8] and (b) the proposition in question can be squared with the Pa. UFTA. In particular with respect to the last point, the Court notes that the subsequent satisfaction of an insolvent debtor's reasonable and necessary household expenses can be viewed as a reasonably equivalent value that is received by said debtor in return for a deposit of his or her funds into an entireties account. *See* 12 Pa.C.S.A. § 5103(a) (Purdon's 1998) ("Value is given for a transfer ... if, in exchange for the transfer ..., property is transferred *or an antecedent debt is ... satisfied*"). There-

---

7. While a creditor would not ordinarily wish to establish that property of a debtor is held jointly with said debtor's spouse as tenants by the entirety, plaintiff herein clearly wishes to establish that defendants' joint bank accounts constitute entireties property so that the debtor's deposits into said accounts can be avoided as fraudulent consistent with the decisions in *Corbett, Garden State Standardbred*, and *Stinner*.

8. This Court disagrees with plaintiff's assertion that *Corbett* has subsequently overruled *Welker* and *Watters* with respect to the proposition for which defendants cite them. Instead, this Court reads *Corbett* to stand (a) broadly for the proposition that an insolvent debtor's deposit of his or her own funds into an entireties account may be and typically is, although it need not necessarily be, fraudulent as to creditors, and (b) more precisely for the proposition that such deposits shall be avoided as fraudulent to the extent that said deposits (i) remain in an entireties account, or (ii) can be traced to subsequently-acquired property that is also held as tenants by the entirety. *See Corbett*, 436 A.2d at 1037–38. This Court can similarly reconcile *Welker* and *Watters* with *Garden State Standardbred*, 611 A.2d at 1243 (fraudulent deposits appear to remain in entireties account); *Stinner*, 446 A.2d at 653 (same); and *Patterson*, 371 A.2d at 1382–83 (same).

fore, to the extent that defendants utilized the instant debtor's deposits which were made into defendants' joint bank accounts on or after February 1, 1994, to satisfy the debtor's reasonable and necessary household expenses, the Court rules, as a matter of law, that said deposits may not be avoided by plaintiff as fraudulent transfers under the Pa. UFTA.

However, the Court wishes to make clear that defendants will not be able to, in any event, shield from avoidance those deposits in question which were then used by defendants to purchase other assets which are presently held as entireties property by defendants. *See Corbett*, 436 A.2d at 1037–38, and *supra* note 8; *see also Watters*, 16 Pa.D. & C.2d at 752 (the *Watters* court listed several examples of reasonable and necessary household expenses of a debtor, including "taxes paid on ... real estate held as tenants by [the] entireties and interest paid on [a] mortgage on property held as tenants by the entireties;" conspicuously absent from the list, however, are payments that are applied to the principal of property which is held as tenants by the entireties). This conclusion can be reconciled with the Pa. UFTA because property subsequently obtained by entireties tenants by use of an insolvent debtor's deposits of his or her own funds into an entireties account cannot, with respect to said insolvent debtor individually, constitute reasonably equivalent value in return for said deposits. *See* 12 Pa.C.S.A. §§ 5103(a), 5101(b) ("Asset," which is defined as "property of a debtor[,] ... does not include ... [entireties property]"), and *supra* pp. 840–41. In stark contrast, the satisfaction of the debtor's reasonable and necessary household expenses can appropriately be viewed as a reasonably equivalent value given in return for the deposits in question notwithstanding that the deposits were thereby dissipated. *See supra* pp. 842–43.

██ Defendants have the burden of proof with respect to whether the deposits in question were used to satisfy the debt-

or's reasonable and necessary household expenses. *See Welker*, 45 Berks at 30; *Watters*, 16 Pa.D. & C.2d at 752–53; *see also Garden State Standardbred*, 611 A.2d at 1243 (debtor has burden to establish he or she received fair consideration in return for a transfer); *Patterson*, 371 A.2d at 1382–83 (same). Unfortunately for defendants, they clearly have not yet carried said burden since they have yet to produce any proof that any of the deposits in question, let alone each of the deposits, were used to satisfy reasonable and necessary household expenses of the debtor. As a result, summary judgment cannot be rendered in defendants' favor at this time with respect to plaintiff's Count 7 as it applies to deposits made by the debtor into defendants' joint bank accounts on or after February 1, 1994. Defendants also possess the burden of proof, which has thus far not been satisfied, in demonstrating that they did not use the deposits in question to purchase other assets which they presently hold as entireties property. *See Id.*

██ Defendants also raise the defenses of equitable estoppel, laches, and waiver with respect to plaintiff's Count 7, contending essentially that plaintiff should not now be able to avoid as fraudulent the debtor's deposits of his own funds into defendants' joint accounts on or subsequent to February 1, 1994. The gravamen of these particular defenses is that Healey, and thus plaintiff, is barred from pursuing the aforementioned deposits because, according to defendants, (a) Healey was aware that the debtor routinely deposited his own funds into accounts owned jointly with Barbara Meinen given the debtor's testimony at the Execution Deposition in November 1992, (b) Healey's delay until now in pursuing an avoidance action with respect to said deposits is inexcusable given said knowledge, and (c) defendants have been prejudiced by Healey's delay since, the debtor contends, he would not have continued to deposit his own funds into defendants' joint bank accounts had

he known that said deposits would ultimately be challenged by Healey as fraudulent. The defenses of equitable estoppel, laches, and waiver are preserved under the Pa. UFTA, *see* 12 Pa.C. S.A. § 5110 (Purdon's 1998), and, in appropriate instances, may be used to shorten the pertinent limitations period. *See* 12 Pa.C.S.A. § 5109 cmt. 2 ("The prescription of statutory periods of limitation does not preclude the barring of an avoidance action for laches"); 12 Pa.C.S.A. § 5110 cmt. (same). Additionally, the Court is of the opinion that Healey's failure to bring an avoidance action prior to plaintiff's present Count 7 is, at least, somewhat inexcusable given (a) Healey's knowledge, as of the date of the Execution Deposition in November 1992, that the debtor routinely deposited his own funds into defendants' joint bank accounts, *see* Execution Dep. at 8–9, (b) that Healey's counsel between 1992 and 1996, Nicholas D. Krawec, was well aware of Pennsylvania case authority which then held that such deposits by an insolvent debtor may be fraudulent, as evidenced by Mr. Krawec's participation as a creditor's counsel of record in *Garden State Standardbred, see Garden State Standardbred,* 611 A.2d at 1240, which case dealt with the precise issues now raised in plaintiff's Count 7, and (c) the failure by Mr. Krawec to pursue as fraudulent the debtor's deposits through 1994 into defendants' joint accounts despite the fact that Mr. Krawec apparently successfully avoided in 1994 as fraudulent the transfer by the debtor of two vehicles to Barbara Meinen. *See* Healey's Aff., para. 52. Unfortunately for defendants, the Court cannot discern any prejudice that either has suffered as a result of Healey's delay (a) because, even

if it is true that the debtor would have ceased making deposits of his own funds into defendants' joint bank accounts had Healey pursued such deposits as fraudulent in a more prompt fashion, the Court must presume that the debtor would have nevertheless directly utilized the funds in the same fashion that defendants did after the funds were deposited into their joint accounts, (b) given that the Court has already held that plaintiff cannot prevail on her Count 7 as it applies to the debtor's deposits on or after February 1, 1994, to the extent that said deposits were utilized by defendants to satisfy the debtor's reasonable and necessary household expenses, *see supra* pp. 842–43, and (c) since any direct transfer of the debtor's funds for a purpose other than to satisfy his reasonable and necessary household expenses either would (i) have been avoidable as fraudulent, such as in the case of a conversion by the debtor of his own assets into entireties assets, *see* 12 Pa.C.S.A. §§ 5103(a), 5101(b) ("Asset," which is defined as "property of a debtor[,] . . . does not include . . . [entireties property]"), and *supra* pp. 840–41, or (ii) have garnered in return assets that he would have owned by himself, which assets could then have been executed upon and, thus, could not now be exempted in the debtor's bankruptcy case.[9] Therefore, defendants' claims of equitable estoppel, laches, and waiver add nothing to defendants' defense with respect to plaintiff's Count 7.

▪ As well, the Court must reject defendants' plea that the avoidance of routine deposits by an insolvent debtor into an entireties account as fraudulent is contrary to public policy. While said doctrine has been questioned on policy grounds on

9. As an aside, the Court notes that, if it had determined that plaintiff could prevail on her Count 7 as it applies to the debtor's deposits on or after February 1, 1994, even in the situation where said deposits were, in fact, utilized by defendants to satisfy the debtor's reasonable and necessary household expenses, then defendants would have been prejudiced by Healey's delay in an amount equal to said reasonable and necessary ex-

penses. This conclusion follows because, had the debtor directly satisfied said expenses with his own funds rather than first depositing said funds into defendants' joint accounts, then such transfer by the debtor of his own funds would not have been fraudulent as to creditors given that the satisfaction of his reasonable and necessary household expenses constitutes reasonably equivalent value. *See* 12 Pa.C.S.A. § 5103(a) and *supra* pp. 842–43.

at least several occasions, *see Garden State Standardbred,* 611 A.2d at 1243–45; *Stinner,* 446 A.2d at 654–55 (McEwen, J., concurring), said doctrine nevertheless continues to be followed by courts in Pennsylvania. *See Id.* Because plaintiff's Count 7 pleads an action under Pennsylvania law that is pursued in this Court via 11 U.S.C. § 544(b), this Court feels obliged as well to follow said precedent.

Therefore, summary judgment on plaintiff's **Count 7** is (a) **GRANTED in favor of defendants and against plaintiff** with respect to any **deposits** made by the debtor into defendants' joint bank accounts **prior to February 1, 1994,** (b) **DENIED WITHOUT PREJUDICE at this time** with respect to **similar deposits** made by the debtor **on or subsequent to February 1, 1994.** Furthermore, plaintiff's Count 7, as it applies to those deposits made by the debtor into defendants' joint bank accounts on or subsequent to February 1, 1994, shall proceed to a jury trial in the U.S. District Court for this district, consistent with this Court's rulings in part I of this order. The sole remaining issue with respect to plaintiff's Count 7 that must be resolved by a jury is whether, and the extent to which, the deposits in question were (a) utilized by defendants to satisfy the debtor's reasonable and necessary household expenses, and/or (b) used by defendants to purchase other assets which are presently held as entireties property by defendants. Defendants shall prevail on plaintiff's Count 7 to the extent that they can establish that the deposits in question were (a) utilized to satisfy the debtor's reasonable and necessary household expenses, and (b) not used to purchase other assets which are presently

held as entireties property by defendants. To the extent that defendants are unsuccessful in demonstrating as much, plaintiff shall succeed on her Count 7.[10]

## V.

■■■ Plaintiff, in her Count 8, seeks to recover from defendants her costs and counsel fees in prosecuting the instant adversary complaint. Plaintiff pursues such cost and counsel fee shifting via Pa. R.Civ.P. 3117(b) and 3118(a)(6), both of which are made applicable to bankruptcy matters pursuant to Fed.R.Bankr.P. 7069 and Fed.R.Civ.P. 69(a). Unfortunately for plaintiff, she cannot prevail on her Count 8 as a matter of law and, thus, summary judgment shall be **GRANTED in favor of defendants and against plaintiff** on said count.

Plaintiff's Count 8 is fundamentally flawed for several reasons. First, Pa. R.Civ.P. 3117 and 3118, as well as Fed. R.Civ.P. 69(a), by their express terms, provide procedural rules solely for (a) the enforcement of a judgment, and (b) discovery and supplementary relief in aid of execution upon a judgment. *See* Pa. R.Civ.P. 3117–3118, 42 Pa.C.S.A. (Purdon's 1987); Fed.R.Civ.P. 69(a), 28 U.S.C.A. (West 1992). Additionally, Pa.R.Civ.P. 3117(b) and 3118(a)(6), in particular, provide for a shifting of costs and fees but only to the extent that said expenses pertain to discovery and supplementary relief in aid of execution upon a judgment. *See Id.* Unfortunately for plaintiff, she has neither (a) obtained, as of the present time, a judgment against either defendant, nor (b) commenced efforts to execute upon such a judgment, such as discovery in aid

10. To the extent that plaintiff succeeds on her Count 7 because defendants have used the deposits in question to subsequently purchase other assets which they presently hold as entireties property, the debtor may not exempt such subsequently-acquired entireties property under 11 U.S.C. § 522(b)(2)(B) and (g) because the debtor, by purchasing such subsequently-acquired entireties property, has voluntarily converted his individual funds into

said entireties property, which voluntary conversion is appropriately viewed as a voluntary transfer by the debtor of his own personal property. *See* 11 U.S.C. § 522(g)(1) (West 1993) (a debtor can only exempt property originally transferred by the debtor and subsequently recovered by a trustee if, *inter alia,* "such transfer was not a voluntary transfer of such property by the debtor").

of such execution. Therefore, neither Pa. R.Civ.P. 3117(b) and 3118(a)(6) nor Fed. R.Civ.P. 69(a) provide a mechanism whereby plaintiff can shift to defendants the obligation for payment of her costs to prosecute the instant adversary proceeding. Of course, Pa.R.Civ.P. 3117(b), 3118(a)(6), and Fed.R.Civ.P. 69(a) can be accessed by plaintiff in the event that she ultimately obtains a judgment against either defendant; quite simply, however, said procedural rules are completely inapplicable unless, and then not until, plaintiff succeeds in obtaining a judgment against either defendant.

Second, plaintiff cannot successfully argue, as a basis for her recovery of any of her costs and counsel fees under Pa. R.Civ.P. 3117(b) and 3118(a)(6), that the instant adversary proceeding was undertaken as a measure to collect upon a prior judgment against the instant debtor because Counts 1–7 of plaintiff's complaint plead fraudulent conveyance actions, rather than the enforcement of a prior judgment, against the debtor. Furthermore, plaintiff, as Chapter 7 bankruptcy trustee in the instant case, is entirely unconcerned with, and thus cannot participate in, any collection efforts on behalf of a creditor vis-a-vis any pre-petition judgment claim that might exist against the debtor (such as Healey's claim).

## VI.

**IN SUMMARY,** (a) summary judgment is **GRANTED in favor of defendants and against plaintiff on Counts 1–6 and 8 of** plaintiff's adversary complaint, (b) defendants' summary judgment motion with respect to plaintiff's **Count 7 is GRANTED IN PART** and **DENIED IN PART,** (c) the remainder of the instant adversary proceeding (i.e., that portion of plaintiff's Count 7 that is not disposed of herein by summary judgment) **SHALL BE RESOLVED** in the **U.S. District Court for the Western District of Pennsylvania** in light of the jury trial demand of Barbara Meinen, and (d) defendants must, within thirty (30) days from the date of this order, take the appropriate measures to effect the transfer of the instant adversary proceeding to the **U.S. District Court** for this district.