NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 12-3866, 12-3867, 12-3868

———————

NATALIE LUTZ CARDIELLO,
            Plaintiff-Appellant-Cross-Appellee

v.

THOMAS D. ARBOGAST and MARY CLAIRE ARBOGAST,
            Defendants-Appellees-Cross-Appellants

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Nos. 2:12-cv-353, 2:12-cv-401, 2:12-cv-402)
District Judge: Honorable Terrence F. McVerry

———————

Argued June 17, 2013
Before: DAVIS, WALKER, JR. and SACK, *Circuit Judges*.*

(Opinion Filed: August 7, 2013)

Neal H. Levin, Esq. (ARGUED)
Freeborn & Peters
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

---

* Honorable Andre M. Davis, of the United States Court of Appeals for the Fourth Circuit, Honorable John M. Walker, Jr. and Honorable Robert D. Sack, of the United States Court of Appeals for the Second Circuit, all sitting by designation following the recusal of the members of the Court of Appeals for the Third Circuit.

Natalie Lutz Cardiello, Esq.
107 Huron Drive
Carnegie, PA 15106

> *Counsel for Plaintiff-Appellant-Cross-Appellee Natalie Lutz Cardiello, Trustee for the Bankruptcy Estate of Thomas D. Arbogast*

Nicolas D. Krawec, Esq. (ARGUED)
Bernstein-Burkley, P.C.
700 Grant Street
Suite 2200 Gulf Tower
Pittsburgh, PA 15219

> *Counsel for Defendant-Appellee-Cross-Appellant Thomas D. Arbogast*

Joseph F. McDonough, Esq.
Buchanan Ingersoll & Rooney, P.C.
301 Grant Street, 20th Floor
One Oxford Centre
Pittsburgh, PA 15219

> *Counsel for Defendant-Appellee-Cross-Appellant Mary Claire Arbogast*

———————

OPINION OF THE COURT

———————

SACK, *Circuit Judge*:

These appeals arise from an adversary proceeding related to the Chapter 7 bankruptcy proceedings of debtor Thomas D. Arbogast ("Thomas") in the United States Bankruptcy Court for the Western District of Pennsylvania. At issue in the adversary proceedings were alleged fraudulent transfers made by Thomas to an account that he and his wife, Mary Claire Arbogast ("Mary Claire"), held as tenants by the entireties (the

"Entireties Account" or the "Account").  The Bankruptcy Court (Markovitz, *J.*) found that there had been fraudulent transfers in the amount of $143,389.10.  The bankruptcy court entered judgment in that amount in favor of plaintiff Natalie Lutz Cardiello, who is the Chapter 7 Trustee in Thomas's bankruptcy action, and against Thomas and Mary Claire as owners by the entireties.  The Trustee appealed that judgment to the United States District Court for the Western District of Pennsylvania, and the Arbogasts cross-appealed; the district court (McVerry, *J.*) affirmed.  The Trustee appeals from that judgment, and the Arbogasts again cross-appeal.  We affirm.

**BACKGROUND**

**A.  Proceedings in State Court**

The bankruptcy proceedings that underlie this appeal are part of the fallout from a landlord-tenant dispute between TrizecHahn Gateway LLC ("Trizec") -- a commercial landlord -- and Titus & McConomy LLP ("T&M") -- a no-longer-extant Pittsburgh law firm.  In 2000, Trizec brought suit in a Pennsylvania Court of Common Pleas against T&M and its general partners, including Thomas, in their individual capacities.  The court found in favor of Trizec, and, in 2006, entered final judgment in the amount of $3.27 million.  Thomas was among the partners upon whom the judgment imposed joint and several liability.

In 2007, as part of its effort to recover on that judgment, Trizec brought a fraudulent transfer action against Thomas and Mary Claire in the Court of Common Pleas.  Trizec alleged that Thomas had been depositing his salary from his new employer,

3

Schnader Harrison Segal & Lewis LLP, into a bank account that he and Mary Claire held as tenants by the entireties. Trizec contended that these deposits constituted fraudulent transfers under the Pennsylvania Uniform Fraudulent Transfer Statute ("PUFTA"), 12 Pa. Cons. Stat. §§ 5101-10.

Before the parties could litigate the fraudulent transfer action, however, the Pennsylvania Superior Court reversed the Court of Common Pleas' judgment against Thomas in the lease litigation, holding that he could not be held liable in his individual capacity. *TrizecHahn Gateway LLC v. Titus*, 930 A.2d 524, 539, 2007 Pa. Super. 196 (Pa. Super. Ct. 2007). Trizec appealed this decision to the Pennsylvania Supreme Court, but it also discontinued the fraudulent transfer action against Thomas and Mary Claire. In July of 2009, the Pennsylvania Supreme Court reversed the Superior Court in the lease litigation, reinstating Thomas's individual liability. *TrizecHahn Gateway LLC v. Titus*, 601 Pa. 637, 646-50, 976 A.2d 474, 479-81 (2009). The Court of Common Pleas in the fraudulent transfer action thereafter granted Trizec's motion to strike its discontinuance of that action.

### B. Proceedings in Bankruptcy Court

Thomas filed a Chapter 7 bankruptcy petition on January 15, 2010, in the United States Bankruptcy Court for the Western District of Pennsylvania. He then removed the fraudulent transfer action to federal court, where it was docketed as an adversary proceeding in the bankruptcy court, *see* 28 U.S.C. § 1452; 28 U.S.C. § 157; Fed. R.

Bankr. P. 7001, and assigned to Bankruptcy Judge M. Bruce McCullough. The bankruptcy court entered an order substituting Cardiello, the Chapter 7 Trustee, for Trizec, thus enabling the Trustee to pursue its right under 11 U.S.C. § 544(b) to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor."

One of the fraudulent transfer theories the Trustee sought to prosecute in the bankruptcy court, and the only one at issue here, was constructive fraud. In general, a transfer is constructively fraudulent as to a creditor if it is "made . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." 12 Pa. Cons. Stat. § 5105; *see also id.* § 5104.

The Trustee's position as to how the law of constructive fraudulent transfer applied to Thomas's deposits was, and continues to be, based on the premise that "under Pennsylvania law, . . . property held as tenants by the entireties is exempt from process by a creditor of only one spouse," *In re Houck,* 184 B.R. 21, 23 (Bankr. E.D. Pa. 1995). So if a debtor spouse deposits his own funds into an entireties bank account and thus out of reach of his creditors, and receives nothing in return for that deposit from the non-debtor spouse, he has "transfer[red]" funds without receiving "reasonably equivalent value" within the meaning of the PUFTA, and that transfer is therefore constructively fraudulent. Plaintiff's Pretrial Statement, Sept. 15, 2010, at 3-4, Joint App'x at 158-59.

This rule, as the Trustee seems to have understood it, was subject to the single qualification that such deposits into an entireties account "are not fraudulent as

5

to . . . creditors to the extent th[e] funds are then used to satisfy reasonable and necessary expenses for the maintenance of said debtor's family." *See* Plaintiff"s Post-Trial Memorandum, Nov. 29, 2010, *Cardiello v. Arbogast*, No. 10-2092-MBM, ECF #64, at 5 (quoting *In re Meinen*, 232 B.R. 827, 842 (Bankr. W.D. Pa. 1999)). To make out its case, the Trustee planned to adduce evidence of all of Thomas's deposits of his salary into the Account as the universe of constructively fraudulent transfers, the amount of which could be reduced only through proof of later expenditures from the Account for "reasonable and necessary expenses."

This view of the applicable law was largely drawn from an opinion Judge McCullough himself had previously handed down, *In re Meinen*, *supra*. But Judge McCullough apparently did not think *In re Meinen* governed the Trustee's claims in this case. Instead, he seems to have been persuaded, or perhaps thought himself bound, by the Pennsylvania state court's approach in a fraudulent transfer action concerning one of Thomas's former partners. The rule established there was that the debtor spouse's deposits into an entireties account were constructively fraudulent against creditors only if spent on luxury items for the exclusive benefit of the non-debtor spouse. Apparently poised to apply this rule after trial, Judge McCullough entered a case management order directing the Trustee to specify which expenditures of funds *from* the Entireties Account it thought were spent on luxuries, undermining the Trustee's desire to enter evidence of Thomas's initial deposits *into* the Account.

After discovery, Judge McCullough held a trial at which the parties litigated, as relevant here, four categories of alleged disbursements from the Entireties Account, totaling about $900,000.00: (1) checks drawn and deposited into an account owned solely by Mary Claire; (2) payments related to the Arbogasts' purchase and maintenance of a house in Florida; (3) membership fees for three different country clubs; and (4) premium payments towards various life insurance policies.

Before he could render a final decision, Judge McCullough died. The case was reassigned to Western District Bankruptcy Judge Bernard Markovitz. Judge Markovitz decided, pursuant to Fed. R. Civ. P. 63, to retry the case, and the retrial again focused on the four categories of expenditures listed above. On February 7, 2012, Judge Markovitz issued a Memorandum Opinion and Judgment resolving the Trustee's claims. *Cardiello v. Arbogast*, 466 B.R. 287 (Bankr. W.D. Pa. 2012). Adopting, by and large, *In re Meinen*'s and the Trustee's understanding of the law governing the case, but applying it to the evidence as limited by Judge McCullough's case management order, Judge Markovitz determined that there were $143,389.10 in constructively fraudulent transfers, based on disbursements related to the Florida residence and the country club memberships. *Id.* at 296, 302-04, 320. Both parties appealed to the district court, that court affirmed, and the parties now renew their appeals here.

**DISCUSSION**

In bankruptcy cases, we "exercise the same standard of review as the District Court when it reviewed the original appeal from the Bankruptcy Court." *In re Handel*, 570 F.3d 140, 141 (3d Cir. 2009). "Thus, we review the Bankruptcy Court's findings of fact for clear error and exercise plenary review over the Bankruptcy Court's legal determinations." *Id.*

**I.  The Trustee's Appeal**

**A.  Exclusion of Evidence of Deposits into the Entireties Account**

We address at the threshold the principal theme of the Trustee's counsel's presentation at oral argument before us: that the bankruptcy court's judgment is fundamentally flawed because the Trustee was precluded from introducing evidence of Thomas's deposits into the Entireties Account, and instead limited to proof of disbursements from the Account. This limitation of the Trustee's proofs, counsel maintained, is so at odds with the law Judge Markovitz ultimately applied to resolve the fraudulent transfer claims that we must vacate the judgment and remand for retrial.

We have no reason to doubt the accuracy of the Trustee's understanding of the law. But we decline to reach the merits of this argument because we conclude that it was waived. "An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'" *Laborers' Int'l Union of North Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)  (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991)  (opinion of Becker, J., announcing the judgment)); Fed. R.

8

App. P. 28; 3d Cir. R. 28.  Despite its centrality at oral argument, and although it is referenced elliptically in the Trustee's briefs, the issue of the evidentiary limitations the bankruptcy court allegedly imposed upon the Trustee does not appear as a ground for appeal in the "Statement of Issues" or "Argument" sections of the Trustee's brief; nor does the Trustee's brief mention the argument in its conclusion, which seeks only a "remand for a recalculation [of fraudulent transfer amounts]," not a new trial.  Appellant's Br. at 28.  We therefore conclude that this argument is not properly before us.

### B. Recovery Period

The first argument properly raised in the Trustee's briefing is that the bankruptcy court erred by limiting its recovery to transfers made between April 23, 2003, and April 23, 2007.  The basis upon which the bankruptcy court did so is the PUFTA's four-year statute of repose, 12 Pa. Cons. Stat. § 5109.  The bankruptcy court interpreted this provision to limit the Trustee's potential recovery to transfers during a four-year "look-back period" stretching backwards from April 23, 2007, the date Trizec first filed the fraudulent transfer action in Pennsylvania state court.  *See Arbogast*, 466 B.R. 287, 300-02.  The Trustee argues that the court erred insofar as it interpreted the PUFTA's statute of repose to preclude it from seeking relief for allegedly fraudulent transfers that took place after Trizec's April 23, 2007, filing.

Once again, the Trustee's argument may have theoretical merit.  But also once again, we ultimately do not reach it.  In a pre-trial conference held before Judge McCullough in this case, the court asked counsel for all parties, "While we're talking

9

about time frames, does anybody disagree that we've got four years we're dealing with here?"  Tr. of Hr'g, Oct. 14, 2010, at 42, Joint App'x at 194.  Counsel for the Trustee responded, "No, sir.  We don't."  *Id.*

"The chief purposes of the pre-trial conferences are to define and simplify the issues, to lessen surprise at trial and the risk of judicial error, to conclude stipulations on matters of evidence, and to promote settlements."  *Price v. Inland Oil Co.*, 646 F.2d 90, 96 (3d Cir. 1981) (internal quotation marks omitted).  To these ends, "this court has . . . been willing to hold the parties bound by pre-trial representations."  *Id.* at 95.  We conclude here, as did the district court on appeal from the bankruptcy court's order, that the Trustee is bound by counsel's unambiguous statement before Judge McCullough.  We therefore reject this ground for appeal.

### C.  Burden of Proof

Finally, the Trustee contends that the bankruptcy court erred in its allocation of the burden of proof with respect to whether the Arbogasts' expenditures from the Entireties Account were for "reasonable and necessary expenses for the maintenance of [the] debtor's family," *Meinen*, 232 B.R. at 842.  The bankruptcy court concluded that the burden of persuasion on this issue remained at all times with the Trustee, but did assign to the Arbogasts "the burden of producing at least some useful evidence regarding what the funds deposited into an entireties account are ultimately spent on."  *Arbogast*, 466 B.R. at 308.  The Trustee argues that the law's exemption for constructive fraud purposes of funds later used for "reasonable and necessary expenses" constitutes an affirmative defense, and that the burden of persuasion should therefore have rested with the

10

Arbogasts.

Pennsylvania law appears to us to be silent as to whether the demonstration that funds were used for "reasonable and necessary expenses" is an affirmative defense or instead, a negation of the plaintiff's prima facie case. *See, e.g.*, *Watters v. DeMilio*, 16 Pa. D. & C.2d 747, 752-53 (Ct. Com. Pl. 1957) (recognizing the rule, but offering no hint as to its nature). Cases from other jurisdictions arising in similar legal contexts, however, have treated the subsequent use of transferred funds as going to the question of "reasonably equivalent value," that is, as negating that element of a plaintiff's prima facie case. *See United States v. Goforth*, 465 F.3d 730, 736 (6th Cir. 2006) (collecting cases). And, as the bankruptcy court recognized, *Arbogast*, 466 B.R. at 307-08, Committee Note 6 of section 5102 of the PUFTA specifically rejects the notion that the burden of proof with respect to whether "the transferor received reasonably equivalent value" should ever shift to the defendant. 12 Pa. Cons. Stat. § 5102 cmt.6.[*]

In any event, because the Arbogasts did indeed produce evidence at trial as to the uses to which funds from the Entireties Account were put, it seems to us highly unlikely that the bankruptcy court's allocation of the burden of persuasion made any difference in this case. *Cf. Ridley School Dist. v. M.R.*, 680 F.3d 260, 271 (3d Cir. 2012) ("In a non-

---

[*] The Pennsylvania Supreme Court has instructed that "[o]fficial comments are to be given weight in the construction of statutes," *Lessner v. Rubinson*, 527 Pa. 393, 398 n.4, 592 A.2d 678, 680 n.4 (1991), a principle that is derived from Pennsylvania statutory law, 1 Pa. Cons. Stat. § 1939. *See also McGowan v. University of Scranton*, 759 F.2d 287, 298 & n.14 (3d Cir. 1985) (recognizing and applying the principle contained in 1 Pa. Cons. Stat. § 1939).

criminal case, an error regarding the placement of the burden of persuasion will frequently be harmless.").  We therefore reject this ground for the appeal.

## II.  The Arbogasts' Cross-Appeal

## A.  Scope of "Reasonable and Necessary Expenses"

We read the Arbogasts' first ground for their cross-appeal to be that the bankruptcy court adopted an unduly narrow conception of what sorts of expenses are "reasonable and necessary . . . for the maintenance of [the] debtor's family."  *Meinen*, 232 B.R. at 842. They argue that this category of expenses should be understood to embrace expenses for anything other than luxuries.  So understood, the Arbogasts posit, the category of "reasonable and necessary expenses" should embrace the expenditures on the Florida residence and the country club memberships, and hence exempt them from the constructive fraudulent transfer calculation.

The Arbogasts cite no authority, nor have we found any ourselves, that suggests that "reasonable and necessary expenses" in this context means "expenses for anything other than luxuries."  Whatever the category's outermost perimeters, moreover, we can find no case extending it so far as to cover such non-essential expenses as vacation residences or country club memberships -- even if either is used from time to time for business purposes.  *Cf. Watters*, 16 Pa. D. & C.2d at 752 (referencing "food, clothing, medical expenses, taxes on . . . real estate . . . and interest paid on [a] mortgage" as reasonable and necessary); *Goforth*, 465 F.3d at 736 (approving use of funds on "food, clothing, utilities, gasoline, property taxes, and travel expenses" as reasonable and necessary).  And we see no reason that the law of fraudulent transfer should permit an

insolvent debtor to transfer his own funds out of the reach of his creditors -- frustrating or delaying attempts to recover a debt -- while still directing the use of those funds towards amenities of his choice.  We therefore affirm the bankruptcy court's decision that the payments towards the Florida residence and the country club memberships were not "reasonable and necessary expenses" within the meaning of Pennsylvania law.

**B.  Reasonably Equivalent Value Through Satisfaction of Thomas's Debts**

The Arbogasts next argue that those funds deposited into the Entireties Account that were later used for membership fees at Thomas's country clubs should not be treated as fraudulent transfers inasmuch as such payments were put towards satisfaction of Thomas's debts to the clubs.  Payment in satisfaction of "antecedent debts," they point out, is included in section 5103 of the PUFTA's definition of "value."  12 Pa. Cons. Stat. § 5103.  And the question of "reasonably equivalent value," they continue, is generally one to be considered under the "totality of the circumstances."  *In re R.M.L., Inc.*, 92 F.3d 139, 153 (3d Cir. 1996).  The Arbogasts maintain that in circumstances in which transferred funds are initially deposited into an entireties account, but eventually used towards satisfaction of a debt owed by the debtor that is of similar value to the funds transferred, the debtor receives "reasonably equivalent value" from the initial transfer, and such transfer would therefore not constitute constructive fraud.

The problem with this argument as applied to the facts of this case -- an initial transfer to an entireties account, followed by a transfer from that account towards satisfaction of a debt -- is that it treats the initial transfer to the entireties account as legally irrelevant.  It is not, inasmuch as that initial transfer places the funds out of all

13

creditors' reach, and therefore, at the least, hinders or delays creditors seeking satisfaction of debts owed them. *Cf. Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 720 (7th Cir. 2002) (addressing a similar argument in a related context, and explaining panel's view that "the inquiry should stop at the first stage of the analysis, that is, should stop after it is determined that the [initial] transfer was not supported by consideration"). It is true, of course, that the uses to which the funds are later put may also be relevant -- for example, through the exemption for funds spent on "reasonable and necessary expenses" addressed *supra*. Similarly, insofar as a later received benefit, either direct or indirect, can be seen as being "as a result of" the initial transfer, it may confer "reasonably equivalent value." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991). But we are aware of no authority suggesting that any later expenditure from a transferee that happens to confer some value upon the transferor sanitizes, for constructive fraud purposes, a transfer that was fraudulent when made. We therefore reject this argument.

### C. Additional Post-Trial Hearing

Finally, the Arbogasts argue that the bankruptcy court erred by not holding an additional hearing after the trial at which they would have had an opportunity to demonstrate that funds from the Entireties Account that were used for expenses the court found not to be "reasonable and necessary" came from Mary Claire, and not Thomas, and therefore could not be counted as constructively fraudulent transfers. They argue that the parties stipulated to such a hearing before Judge McCullough, and that Judge Markovitz was bound by this stipulation.

14

Even if the parties did agree on such a hearing before Judge McCullough, we find nothing in the record to establish that the Arbogasts brought this to Judge Markovitz's attention.  We conclude, considering the circumstances, that it was incumbent upon them to do so before they can assert that such a hearing was wrongly withheld.  We therefore reject this ground for appeal also.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.